**Elinor MEYER, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General of the United States, William P. Concannon, and Ronald E. Henderson, Defendants.**

**Civ. A. No. 93–12181–RCL.**

United States District Court, D. Massachusetts.

Nov. 23, 1994.

---

Paul L. Nevins, Wellesley, MA, for plaintiff.

Cheryl L. Conner, Asst. U.S. Atty., Boston, MA, Peter W. Gallaudet, Law Dept., U.S. Postal Service, Windsor, CT, for defendants.

LINDSAY, District Judge.

Report and Recommendation Accepted.

**MOTION TO DISMISS OR, IN THE AL-TERNATIVE, FOR SUMMARY JUDG-MENT OF THE DEFENDANTS MAR-VIN T. RUNYON, POSTMASTER GENERAL OF THE UNITED STATES, AND RONALD E. HENDERSON AND WILLIAM P. CONCANNON, AS THEY ARE OFFI-CERS OF THE UNITED STATES POSTAL SERVICE AND INDIVIDU-ALS (DOCKET ENTRY #10)**

November 8, 1994

BOWLER, United States Magistrate Judge.

Defendants Marvin T. Runyon ("Runyon"), Postmaster General of the United States, William P. Concannon ("Concannon"), Human Resources Specialist for the Northeast Area Injury Compensation Office of the United States Postal Service, and Ronald E. Henderson ("Henderson"), Manager of Human Resources for the Providence District of the United States Postal Service (collectively: "defendants") seek dismissal or, alternatively, summary judgment. (Docket Entry #10). Plaintiff Elinor Meyer ("plaintiff"), an employee of the United States Postal Service at the time of her injury, opposes the motion. (Docket Entry #13). After conducting a hearing (Docket Entry #17), this court took the motion (Docket Entry #10) under advisement.

## BACKGROUND

Prior to summarizing the factual record, it is necessary to determine the contents of the record. Construed as a motion for summary judgment, this court may consider the affidavits attached to defendants' memorandum (Docket Entry #11) as well as the verified complaint submitted by plaintiff (Docket Entry #1). Rule 56(c), Fed.R.Civ.P.; *Sheinkopf v. Stone,* 927 F.2d 1259, 1262–1263 (1st Cir.1991) (court may consider factual averments based on personal knowledge in verified complaint but not conclusory allegations therein when deciding summary judgment motion).

Both parties submitted statements of material facts as required by LR. 56.1 of the United States District Court for the District of Massachusetts. Material facts, as opposed to conclusory allegations, set forth in the statements are admitted unless controverted. LR. 56.1. With these precepts in mind, the factual record for purposes of summary judgment is as follows.

On or about September 17, 1988,[1] plaintiff, a letter carrier at the Plymouth Post Office in Plymouth, Massachusetts, slipped and fell while delivering mail on her route. (Docket Entry #11, Ex. A, ¶1; Docket Entry #14, ¶¶1 & 2). Plaintiff completed her route and reported to work on her next scheduled day, September 19, 1988. (Docket Entry #1, ¶7; Docket Entry #14, ¶3). In September 1988, Concannon avers that plaintiff filed a workers' compensation claim, also referred to as an injury compensation claim. Concannon was assigned to administer the claim. (Docket Entry #14, Ex. C).

On or about September 19, 1988, plaintiff sought medical attention. An orthopedic physician described plaintiff as "Post Carpal Tunnel Syndrome." (Docket Entry #1, ¶9; Docket Entry #14, ¶5).

By letter dated September 23, 1988, Concannon advised a claims examiner at the Office of Workers' Compensation for the Department of Labor ("the DOL") about plaintiff's injury and diagnosis. He surmised that the injuries described were inconsistent with the nature of the September 17, 1988 incident. Concannon requested that the "claim be closely examined" inasmuch as the United States Postal Service ("Postal Service") incurred a significant monetary liability for employees injured in the course of their job. (Docket Entry ##1 & 14; Docket Entry #11, Ex. C & Att. B).

1. Defendants note the date as September 18, 1988.

On November 31, 1988, the DOL accepted plaintiff's claim for workers' compensation benefits for the condition of her arm, elbow, head and back contusions and abrasions. (Docket Entry # 11, Ex. C, ¶ 12). The parties dispute whether Concannon treated plaintiff in a respectful manner and, in particular, whether he coerced or encouraged plaintiff to terminate her employment with the Postal Service. (Docket Entry # 14, ¶ 8; Docket Entry # 11, Ex. C, ¶ 6).

Plaintiff attests that on June 7, 1989, Concannon telephoned her and insisted that she should be working. Plaintiff further attests that Concannon telephoned her again on June 13, 1989, and told plaintiff that, "This has gone on long enough and I am going to (sic) you back to work, no matter what." [2] (Docket Entry # 1, ¶¶ 13–14; Docket Entry # 14, ¶¶ 9–10).

In June 1989 Concannon contacted the office of plaintiff's treating physician, "Dr. Ruby," to determine if plaintiff could return to work in a limited duty capacity. Concannon spoke with Dr. Ruby's assistant who advised him that plaintiff could perform work in a limited capacity. (Docket Entry # 11, Ex. C, ¶ 8). According to plaintiff, Concannon telephoned her again on June 16, 1989, and insisted that she return to work. In fact, according to plaintiff, Concannon told plaintiff that if she did not return to work, she would be terminated.[3] (Docket Entry # 1, ¶¶ 15–18; Docket Entry # 14, ¶¶ 11–14).

On June 19, 1989, plaintiff reported to work and, despite the pain in her arms and hands, continued working. (Docket Entry # 1, ¶¶ 20 & 27; Docket Entry # 11, Ex. C, ¶ 9). Concannon denied plaintiff's request to leave work on June 19, 1989, despite her complaints of pain.[4] (Docket Entry # 1, ¶¶ 26–28). After several attempts, plaintiff contacted her treating physician, on June 20,

1989, who advised her to leave work. Following Dr. Ruby's advice, plaintiff left work around noon on June 20, 1989. (Docket Entry # 1, ¶¶ 19, 25, 31 & 32).

Plaintiff telephoned Concannon when she arrived home on June 20, 1989. Concannon informed her that he did not believe she was in pain or unable to work. He also "yelled at her." [5] (Docket Entry # 1, ¶¶ 33–35).

On June 27, 1989, Henderson directed plaintiff to undergo a fitness for duty examination on July 5, 1989. As explained in Henderson's letter to plaintiff, the purpose of the examination was to determine plaintiff's ability to return to work in a limited capacity. (Docket Entry # 11, Ex. D & Att. C & D).

Henderson also wrote to the medical examiner, Dr. James D. McEleney ("Dr. McEleney"), on June 27, 1989, and explained the nature of plaintiff's injury. After noting that plaintiff underwent surgery to her right wrist in May of 1989, he advised Dr. McEleney that plaintiff's treating physician, Dr. Ruby, believed that further surgery was needed on her left wrist before plaintiff could return to work. Henderson also described plaintiff's condition to Dr. McEleney as "not so serious as to prevent her from doing clerical duties at the Post Office." [6] (Docket Entry # 11, Ex. D & Att. D). The medical examiner, presumably Dr. McEleney, determined that plaintiff was totally disabled. (Docket Entry # 1, ¶ 38; Docket Entry # 14, ¶ 34).

On September 5, 1989, Concannon wrote to the DOL claims examiner. Attaching a copy of plaintiff's employment application, Concannon noted that plaintiff was formerly employed at the Jordan Hospital and that the Postal Service had received information that plaintiff had been experiencing carpal tunnel

---

**2.** This court does not consider Concannon's statements made during these two telephone calls for the truth of the matter asserted.

**3.** See the preceding footnote.

**4.** This court does not consider plaintiff's recantation of Concannon's statements for the truth of the matter asserted.

**5.** Again, this court does not consider these statements for the truth of the matter asserted, i.e.,

that Concannon told plaintiff she was not in pain.

**6.** Again, this court does not consider Henderson's statements for the truth of the matter asserted. Rather, this court considers the statements for purposes of assessing Henderson's motivations and whether his actions fall within the scope of his employment.

syndrome since 1985.[7] Accordingly, Concannon asked the claims examiner to direct plaintiff to submit any medical records associated with her carpal tunnel syndrome. Concannon, whose responsibilities included administering the "return-to-work program" of disabled employees and identifying employees eligible to return to work, considered it his duty to fully apprise the DOL of information concerning plaintiff's condition. (Docket Entry # 11, Ex. C, ¶¶ 10–11 & Att. A & C).

On January 23, 1990, the DOL accepted plaintiff's claim for benefits for her condition of "bilateral carpal tunnel syndrome." (Docket Entry # 11, Ex. C, ¶ 13). On May 14, 1990, Henderson ordered plaintiff to undergo a second fitness for duty examination. By letter dated May 14, 1990, Henderson advised plaintiff's attorney of the examination and its purpose. On the same day, Henderson wrote to the medical examiner noting that, "It appears as though [plaintiff] may be extending her disability unnecessarily." (Docket Entry # 11, Ex. D, ¶ 8 & Att. E & F; Docket Entry # 1, ¶ 42; Docket Entry # 14, ¶ 38).

On January 27, 1992, Henderson directed plaintiff to undergo a third fitness for duty examination. He also sent letters to plaintiff's attorney and the medical examiner explaining the basis for his decision. In the letter to the medical examiner, Henderson indicated that plaintiff "does not appear to be undergoing any type of treatment" and was seeing a doctor who "advises everyone to 'take [three] months off.'" (Docket Entry # 14, ¶ 38; Docket Entry # 1, ¶ 43; Docket Entry # 11, Ex. D, ¶ 9 & Att. G & H).

On March 2, 1992, Concannon wrote to plaintiff, enclosed a "CA-7" form and asked her to complete it. Concannon avers that he needed a completed form in order to continue processing plaintiff's workers' compensation claim. (Docket Entry # 11, Ex. C, ¶ 14 & Att. D). Plaintiff characterizes the letter as harassing. (Docket Entry # 14, ¶ 40).

On March 18, 1992, plaintiff telephoned the Equal Employment Opportunity ("EEO") office. (Docket Entry # 14, ¶ 41 & Ex. 2 & 3;

Docket Entry # 11, Ex. B, ¶¶ 4–5). The Counseling Intake Form indicates that plaintiff alleges discriminatory treatment as a result of:

written misstatements concerning [her] compensable injury, harassing phone calls continually, threat of job loss for pursuing [her injury] comp [sic] claim, failure to file OWCP forms in a timely manner, alleged loss of OWCP forms sent by [plaintiff] to the P.O. and then for submission to the Dept. of Labor–OWCP. Failure to provide information sheets with OWCP forms so they may be completed correctly. Verbal threats, signing OWCP files without my permission or knowledge. Failure to comply with written requests to Mr. Concannon from [plaintiff]. Threat of administrative action if I did not attend exams from Mr. Henderson.

(Docket Entry # 11, Ex. B, Att. A). On the form, plaintiff notes the date of action as "Sept. 26, 1988 to date continuing." (Docket Entry # 11, Ex. B, Att. A).

William C. Coutu ("Coutu"), Labor Relations Specialist for the Providence District of the United States Postal Service and, prior to 1993, EEO Counselor/Investigator for the Providence Division, was assigned to plaintiff's claim. (Docket Entry # 11, Ex. B). On May 21, 1992, an EEO counselor interviewed plaintiff. (Docket Entry # 14, Ex. 2). The summary of the interview states that plaintiff alleges discrimination on the basis of sex (female) and handicap status (carpal tunnel syndrome) with respect to the processing of her workers' compensation claim. (Docket Entry # 14, Ex. 2).

On July 9, 1992, two days after completion of the EEO's counseling phase, plaintiff filed a formal complaint of discrimination. (Docket Entry # 11, Ex. B, ¶ 5; Docket Entry # 14, ¶ 43). The Postal Service accepted the complaint for investigation, noted the date of the incident as March 2, 1992, and defined the scope of the complaint as alleging discrimination on the basis of sex, age and physical handicap pertaining to: (1) harassment and threats with respect to the processing of plaintiff's workers' compensation

---

**7.** Plaintiff characterizes Concannon's statement as false. (Docket Entry # 1, ¶ 41).

claim; and (2) misstatements made by postal officials to "OWCP" [8] and the failure to process the claim in a timely manner. (Docket Entry # 11, Ex. B & Att. B).

On October 9, 1992, the Postal Service completed its investigation. On November 9, 1992, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Docket Entry # 14, ¶ 44; Docket Entry # 11, Ex. B, ¶ 5). On June 27, 1993, the ALJ issued a decision denying the majority of plaintiff's claims on the basis that such claims were time barred because plaintiff failed to contact an EEO counselor within 45 days of the date of the discriminatory incident. He further found plaintiff's claims pertaining to improper processing moot inasmuch as the OWCP processed and paid plaintiff's claim. (Docket Entry # 11, Ex. B & Att. E).

On July 6, 1993, the Postal Service dismissed plaintiff's complaint. (Docket Entry # 11, Ex. B, ¶ 5). On October 6, 1993, plaintiff filed this action. (Docket Entry # 1). Thereafter, the United States Attorney for the District of Massachusetts signed certificates stating that Henderson and Concannon were acting within the scope of their employment as employees of the Postal Service with respect to plaintiff's allegations.[9] (Docket Entry # 11, Ex. F & G).

### DISCUSSION

Defendants move for summary judgment with respect to the claims in the complaint. (Docket Entry # 10). Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In deciding whether a factual dispute is genuine, this court must determine whether the evidence about the fact "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Morris*

*v. The Government Development Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir.1994) (quoting *Anderson*). A fact is "material" if "the fact is one that might affect the outcome of the suit under the governing law." *Morris v. The Government Development Bank of Puerto Rico*, 27 F.3d at 748. Further, summary judgment "can be employed to determine the applicability of a statutory time bar to a particular set of facts." *Morris v. The Government Development Bank of Puerto Rico*, 27 F.3d at 748.

The complaint alleges discriminatory violations of: (1) the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("the ADEA") (First Claim for Relief; Second Claim for Relief); (2) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c), on the basis of plaintiff's sex and retaliation for filing a discrimination claim (Third Claim for Relief); and (3) section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791–796i ("the Rehabilitation Act"), on the basis of plaintiff's handicap of carpal tunnel syndrome (Fourth Claim for Relief). Plaintiff also brings two state common law causes of action based on Concannon's and Henderson's tortious interference with plaintiff's employment (Fifth Claim for Relief) and defamation (Sixth Claim for Relief). (Docket Entry # 1).

Plaintiff states that she "has not claimed that she has sued the individual defendants in their official capacities." (Docket Entry # 13, p. 17). Nor, according to plaintiff, has she "brought suit under the Federal Tort Claims Act." (Docket Entry # 13, p. 17). Therefore, this court will not address defendants' argument that plaintiff's state law claims against Concannon and Henderson in their official capacity are barred under provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (Docket Entry # 11, pp. 11–14).

The complaint fails to identify whether the federal claims apply only to Runyon.

---

8. While not identified in the papers, OWCP is presumably an acronym for Office of Workers' Compensation Program.

9. The Code of Federal Regulations delegates the Attorney General's certification authority under

the Westfall Act, 28 U.S.C. § 2679(d), to the United States Attorney. 28 C.F.R. § 15.3; *Wood v. United States*, 995 F.2d 1122, 1124 (1st Cir. 1993).

The only proper defendant in a Title VII case is the head of the agency. 42 U.S.C. § 2000e–16(c); *Soto v. U.S. Postal Service,* 905 F.2d 537, 539 (1st Cir.1990), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 679, 112 L.Ed.2d 671 (1991) ("in cases brought against the Postal Service, the Postmaster General is the only properly named defendant"); *Rys v. U.S. Postal Service,* 886 F.2d 443, 444 (1st Cir. 1989) (Postmaster General "is the only statutorily appropriate defendant"); *Pierce v. Runyon,* 857 F.Supp. 129, 131 (D.Mass.1994) ("only proper defendant in a Title VII action is the head of the agency, here Marvin Runyon"). Accordingly, plaintiff's causes of action under Title VII shall proceed only against Runyon, who is the current Postmaster General.

■ Sections 501 and 505(a)(1), as amended, 29 U.S.C. § 791 and 794a(a), of the Rehabilitation Act incorporate the remedies and procedures of Title VII. *See Nunnally v. MacCausland,* 996 F.2d 1, 2 (1st Cir.1993); *DesRouches v. United States Postal Service,* 631 F.Supp. 1375, 1378 (D.N.H.1986); *Connolly v. United States Postal Service,* 579 F.Supp. 305, 307 (D.Mass.1984). Hence, the only proper defendant with respect to a suit brought under these provisions of the Rehabilitation Act is the agency head, in this instance Runyon. *See McGuinness v. United States Postal Service,* 744 F.2d 1318, 1322 (7th Cir.1984).

■ Although the ADEA is silent as to the identity of the proper defendant, the provision of the ADEA applicable to the federal employment sector is patterned after Title VII. *Lavery v. Marsh,* 918 F.2d 1022, 1024 (1st Cir.1990) (applying Title VII limitations period to age discrimination claim by federal employee). Thus, courts reason that the only proper defendant "in a federal employee's ADEA action is the head of the federal agency that employs the plaintiff." *Abanco v. Veterans Administration Medical Center,* 1987 WL 17471´ (N.D.Ill. September 18,

1987); *accord Ellis v. United States Postal Service,* 784 F.2d 835, 838 (7th Cir.1986) (dismissing age discrimination claim for failure to name Postmaster General as defendant); *Attwell v. Granger,* 748 F.Supp. 866, 873 (N.D.Ga.1990) (collecting cases finding that only proper defendant is agency head in ADEA claim by former federal employee); *Roche v. United States Postal Service,* 1988 WL 141540 (D.Mass. December 13, 1988) (Postmaster General is only proper defendant in federal letter carrier's age discrimination claim); *Rattner v. Bennett,* 701 F.Supp. 7, 9 (D.D.C.1988) (agency head is only proper defendant in former federal employee's ADEA action); *but see Braverman v. Penobscot Shoe Co.,* 859 F.Supp. 596 (D.Me.1994); *Shostak v. U.S. Postal Service,* 655 F.Supp. 764 (D.Me.1987). Accordingly, plaintiff's age discrimination claims apply only to Runyon.

### A. *Administrative Exhaustion*

■ Defendants argue, in part, that plaintiff failed to exhaust her administrative remedies under Title VII, the ADEA and the Rehabilitation Act. They point out that plaintiff did not contact an EEO counselor within 45 days of the discriminatory event.[10] (Docket Entry # 11).

"Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal court." *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990). Thus, a federal employee "must contact an EEO counselor within 30 days of the event that triggers his claim." *Jensen v. Frank,* 912 F.2d at 520; *accord Pierce v. Runyon,* 857 F.Supp. at 131 (federal employee must file complaint with EEO counselor within 30 days of the discriminatory event or date when employee knew or should have known of discriminatory event). Furthermore, Title VII's limitations period also applies to an ADEA claim brought by a federal employee. *Lavery v. Marsh,* 918 F.2d at 1027.

The pertinent regulation at issue provides that an aggrieved person must initiate contact with an EEO counselor within 45 days of the discriminatory act. 29 C.F.R. § 1614.105(a)(1); *see Ross v. Runyon,* 858 F.Supp. 630, 637 (S.D.Tx.1994).

**10.** Defendants do not argue that plaintiff failed to comply with the time limits of filing suit after receipt of the notice of the agency's adverse action. Accordingly, this court need not address this argument despite plaintiff's discussion of the issue.

With respect to the Rehabilitation Act, in 1978, Congress amended the Rehabilitation Act "to create a private cause of action under section 501 against federal agencies and departments, including the USPS." *DesRouches v. United States Postal Service*, 631 F.Supp. at 1378. Section 505(a)(1), as amended, 29 U.S.C. § 794a(a), incorporates the procedures and remedies, including administrative exhaustion, of Title VII into section 501, as amended, 29 U.S.C. § 791. *See Nunnally v. MacCausland*, 996 F.2d at 2 (handicap discrimination claims of former federal employee "governed by the procedures set forth in Title VII"); *Connolly v. United States Postal Service*, 579 F.Supp. at 307 (former federal employee's private right of action under section 501, as amended, 29 U.S.C. § 791, "subject to the same procedural restraints set forth in Title VII, *including administrative exhaustion* ") (emphasis added).

Plaintiff attempts to bypass the 45 day limitations period by contending that defendants engaged in a serial violation. A serial violation is comprised of "a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII." *Jensen v. Frank*, 912 F.2d at 522. It is imperative to distinguish between the discriminatory act and the ongoing injuries or later effects of the act. *Jensen v. Frank*, 912 F.2d at 522; *Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 182 (1st Cir.1989).

Moreover, the discriminatory act must be discriminatory as to plaintiff. Plaintiff bears the burden of showing "that at least one discriminatory act occurred within the limitations period." *Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994) (citing *Jensen* ). Not every act committed within the limitations period creates a serial violation. For example, a failure to rehire a discharged employee does not create a serial violation.

*Desrouches v. United States Postal Service*, 631 F.Supp. at 1380.

Here, plaintiff points to Concannon's March 2, 1992 letter which, admittedly, falls within the 45 day time period. In the letter, Concannon simply requests that plaintiff complete a particular form. (Docket Entry # 11, Ex. C, Att. D). Although the letter is an act aimed at plaintiff, this court doubts whether the act is itself discriminatory. Viewing the record in the nonmovants' favor, however, the letter is one of a series of events regarding the continued processing of plaintiff's compensation claim. Plaintiff's ongoing relationship with Concannon and Henderson through their continued processing of plaintiff's compensation claim distinguishes her situation from that of a discharged employee. Whether Concannon acted in a discriminatory manner is arguable given his repeated directives to plaintiff and his repeated attempts to have plaintiff return to work despite her injury. While the issue is close, a reasonable jury could resolve the issue in plaintiff's favor. Hence, summary judgment is inappropriate at this juncture.[11]

### B. *Immunity*

Defendants submit that as to any cause of action brought against Concannon and Henderson in their individual capacity, Concannon and Henderson receive absolute immunity with respect to conduct done in the scope of their employment. Plaintiff maintains that, notwithstanding the certificates of the United States Attorney, the issues of whether Concannon and Henderson acted within the scope of their employment are factual disputes which cannot be resolved on summary judgment.

Concannon's and Henderson's immunity is governed by the Westfall Act, properly known as the Federal Employees Liability Reform and Tort Compensation Act. The Westfall Act creates "a type of *respondeat*

---

**11.** The viability of plaintiff's federal claims depends upon the timeliness of her contact with the EEO counselor and the finding of a serial violation. Because of the closeness of the issue and in the interest of resolving this determinative issue prior to trial, defendants are not foreclosed from seeking a resolution of this issue upon submission of additional evidentiary material. Trial is presently set for January 17, 1995. (Docket Entry # 12).

Having determined that a serial violation exists given the present record, this court need not address plaintiff's argument (Docket Entry # 13, p. 15) which apparently concerns a waiver.

*superior* immunity for federal employees that roughly tracks the federal government's *respondeat superior* liability." *Wood v. U.S.,* 995 F.2d 1122, 1125 (1st Cir.1993). It provides that:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury ... arising or resulting from the negligent or wrongful act ... of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee.

28 U.S.C. § 2679(b)(1). The purpose of the Westfall Act is "to protect federal employees from personal liability for common law torts committed within the scope of their employment." *Nasuti v. Scannell,* 906 F.2d 802, 804 (1st Cir.1990). By enacting 28 U.S.C. § 2679 Congress intended to immunize federal employees "from claims of wrongdoing of a particular *type* [which] ... consists of the sort of wrongdoing for which employers, typically, are vicariously liable under principles of *respondeat superior.*" *Wood v. U.S.,* 995 F.2d at 1125 (emphasis in original).

As noted in 28 U.S.C. § 2679(b)(1), the action against the United States is exclusive of any other civil action against the federal employee[s] involving "the same subject matter." Consequently, the fact that plaintiff labels the tort as defamation or tortious interference with an employment relationship does not dictate a finding of intentional conduct outside the scope of employment. *See, e.g., Kelly v. U.S.,* 924 F.2d 355, 356–357 (1st Cir.1991) (allegations that the defendants failed to properly investigate rumors about the plaintiff fell within scope of employment); *Cardozo v. Graham,* 848 F.Supp. 5, 8 (D.Mass.1994) (allegation of surreptitious tape recording purportedly used to prevent employee's promotion fell within scope of employment albeit under New Hampshire law). Instead, this court examines the conduct alleged and not the label applied to determine the scope of employment issue.

■ In accordance with 28 U.S.C. § 2679(d)(1), the United States Attorney certified that given the information before him concerning the claims in the complaint, both Concannon and Henderson acted within the scope of their employment at the time of the acts in question. (Docket Entry # 11, Ex. G & F). While the certificates properly assume rather than deny the existence of the claims and therefore the conduct in question, plaintiff correctly notes, that the certificates are not binding on this court. Rather, this court has an obligation to independently resolve the scope of employment issue. *Nasuti v. Scannell,* 906 F.2d at 812–813.

In determining whether the conduct at issue falls within the scope of Concannon's and Henderson's employment, this court turns to the relevant state law, i.e., Massachusetts. *See Kelly v. U.S.,* 924 F.2d at 357 (scope of employment question calls into play the law of the state where the conduct occurred). "In Massachusetts, the 'conduct of an agent is within the scope of employment if it is of the kind he is employed to perform; if it occurs substantially within the authorized time and space limits; and if it is motivated, at least in part, by a purpose to serve the employer.'" *Kelly v. U.S.,* 924 F.2d at 357 (quoting *Wang Laboratories, Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 501 N.E.2d 1163, 1166 (1986)).

■ While ordinarily under Massachusetts law it is "the actual and customary, rather than formally described, duties which determine the scope of employment," *Howard v. Town of Burlington,* 399 Mass. 585, 506 N.E.2d 102, 105–106 (1987), the record reflects both the formal description of Concannon's and Henderson's duties and their actual responsibilities. As Injury Compensation Specialist, Concannon administered injury compensation claims. His duties included preparing and forwarding the necessary information to challenge an injury claim and also presenting the Postal Service's factual account of the claim. Concannon's formal duties included administering the return to work program of disabled employees, such as plaintiff, and preparing and reviewing pertinent documents required by the injury compensation program, such as the form noted in

Concannon's March 2, 1992 letter.[12] Concannon's formal duties also required frequent contact with DOL representatives and private health care professionals, such as Dr. Ruby, regarding not only the processing but the adjudication and settlement of injury compensation claims. (Docket Entry # 11, Ex. C, ¶¶ 2–3 & Att. A).

Consequently, Concannon's duties encompass the activity described in the complaint. Concannon was required to present the view of the Postal Service. Writing the DOL and requesting a close examination of plaintiff's claim, contacting plaintiff about returning to work, requesting that the DOL direct plaintiff to produce certain medical records, contacting Dr. Ruby to ascertain plaintiff's ability to return to work and then directing that plaintiff report to work are the types of activities which Concannon is employed to perform.

In addition, the fact that Concannon may have had a personal motive in contacting plaintiff does not detract from the fact that Concannon also had a motive which served his employer, i.e., that of processing and administering plaintiff's injury compensation claim. Section 236 of *The Restatement (Second) of Agency* (1958) addresses whether conduct with a dual purpose falls within the scope of employment. As explained in comment b to section 236:

> The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service.... So also, the act may be found to be in the service if not only the manner of acting but the act itself is done largely for the servant's purposes.

*Restatement (Second) of Agency* (1958).

Finally, Concannon's conduct presumably took place within the time and space of his work as Injury Compensation Specialist. His conduct therefore falls within the scope

of his employment entitling him to immunity from plaintiff's fifth and sixth claims for relief.

■ Henderson, the Director of Human Resources for the Brockton Management Sectional Center at the time of the events in question, was responsible for supervising the Injury Compensation Unit. As explained in the Employee and Labor Relations Manual of the United States Postal Service, a fitness for duty examination is required in order to determine whether an employee can perform the duties of a particular position despite a disability. More importantly, "Management can order fitness-for-duty examinations at any time and repeat, as necessary, to safeguard the employee or coworker. Specific reasons for the fitness-for-duty should be stated by the referring official." (Docket Entry # 11, Ex. D, Att. D).

Plaintiff complains that Henderson repeatedly scheduled independent medical examinations of plaintiff by letters dated June 27, 1989, May 14, 1990 and January 27, 1992. Plaintiff particularly notes Henderson's comments to the medical examiners, to wit: (1) "it appears that [plaintiff's] condition is not so serious as to prevent her from clerical duties;" (2) "it appears as though [plaintiff] may be extending her disability unnecessarily;" and (3) "[plaintiff] is seeing Dr. Kelly who advises everyone to 'take 3 months off and come see me.'" (Docket Entry ## 1, 11 & 14).

Henderson's activities of ordering independent medical examinations and informing plaintiff and the medical examiners of the reasons for the examinations are the kinds of activities encompassed in Henderson's employment as Director of Human Resources for the Brockton Management Sectional Center. Henderson avers that he periodically approved requests from the Injury Compensation Unit that plaintiff undergo fitness for duty examinations. Such examinations, he notes, assist the Postal Service in evaluating an injury compensation claim and in determining what activities an injured employee

12. Concannon avers that he needed plaintiff to complete the form noted in the March 2, 1992 letter to continue administering her injury com-

pensation claim. Such an activity falls within the scope of Concannon's employment.

can perform. He also attests that such orders "are routine and standard procedures utilized by [him] to assist the Injury Compensation Unit in administering workers' compensation claims." (Docket Entry # 11, Ex. D & Att. B).

Henderson's characterizations and descriptions of plaintiff's injury and treatment are the kinds of activities appurtenant to his job. While perhaps overzealous or one sided, his comments were motivated, at least in part, to assist the Injury Compensation Unit which Henderson supervises. As such, Henderson's conduct falls within the scope of his employment entitling him to immunity from plaintiff's fifth and sixth claims for relief.

In light of Concannon's and Henderson's immunity, it is appropriate to allow summary judgment as to the fifth and sixth claims for relief. Accordingly, this court need not address defendants' argument that Title VII, the ADEA and the Rehabilitation Act constitute the exclusive remedies available to plaintiff (Docket Entry # 11, pp. 4–7).

### CONCLUSION

In accordance with the foregoing, this court **RECOMMENDS**[13] that defendants' motion to dismiss or, alternatively, for summary judgment (Docket Entry # 10) be **ALLOWED** as to plaintiff's fifth and sixth claims for relief and **DENIED** as to plaintiff's remaining claims for relief.

---

**13.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).