Donald A. JENSEN, Plaintiff,
Appellant,

v.

Anthony M. FRANK, Postmaster
General, United States Postal
Service, Defendant, Appellee.

No. 90–1168.

United States Court of Appeals,
First Circuit.

Heard June 4, 1990.

Decided Aug. 27, 1990.

518

Stephen A. McNerney, for plaintiff, appellant.

Mark W. Pearlstein, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Jesse L. Butler, Asst. Gen. Counsel, and Lori J. Dym, Atty., Office of Labor Law, were on brief for defendant, appellee.

Before SELYA and SOUTER *, Circuit Judges, and BOWNES, Senior Circuit Judge.

SELYA, Circuit Judge.

This is an action under 42 U.S.C. § 2000e–16 wherein plaintiff-appellant Donald A. Jensen claims that he was fired by reason of national origin. The United States District Court for the District of Massachusetts granted the Postmaster General's motion for summary judgment on the ground that appellant failed to bring his complaint to the attention of an Equal Employment Opportunity (EEO) counselor within 30 days of the triggering event, as required by law.[1] Jensen appeals both

---

* Judge Souter heard oral argument in this matter, and participated in the semble, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

1. The applicable regulation provided that a postal employee's discrimination complaint may only be processed if:
> The complainant brought to the attention of an Equal Opportunity Employment Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel

from this ruling and from the district court's earlier decision not to sanction the Postmaster General for an alleged failure to comply with a court order. We affirm.

## I. BACKGROUND

Jensen enrolled in the postal service in 1973. He was working as a distribution clerk in the Worcester post office when, on December 11, 1982, he was arrested while on the clock. A search of Jensen's person and car yielded, *inter alia,* football cards and a list of bettors' names (including the names of some postal employees). The police charged Jensen with promoting a lottery and possession of gaming apparatus.

By letter dated December 15, the post office placed appellant on indefinite suspension pending an investigation. On January 6, 1983, Jensen received a follow-up letter notifying him that his employment would be terminated effective February 11 because he had violated an established proscription against gambling by postal employees while on duty or on federal property.[2] Jensen's union grieved the firing on his behalf and, attaining no satisfaction, brought the case to arbitration. The arbitrator eventually upheld the personnel action.

Appellant first contacted an EEO counselor by telephone on June 22, 1983. On June 30, he submitted a "Discrimination Complaint Receipt Form" in which he listed his national origin as "Lithuanian and Italian." On a sheet accompanying this form, he alleged national origin discrimination. In this and subsequent documents, appellant also alleged that (1) he had been discriminated against in reprisal for past use

of the grievance/arbitration process and (2) other postal employees had been charged with serious crimes or section 661.56 infractions but had not lost their jobs.

Jensen filed a formal administrative complaint on September 21, claiming to have been a victim of discrimination based on national origin, namely, his "Italian/Lithuanian" heritage. The postal service rejected the complaint as untimely. Jensen appealed this decision to the postal service's Office of Review and Appeals (ORA) on November 25, 1983. By letter of October 22, 1984, the ORA affirmed the postal service's decision and advised Jensen that he had 30 days to bring a Title VII action in federal court. *See* 42 U.S.C. § 2000e–16(c); *see also Soto v. United States Postal Service,* 905 F.2d 537, 539 (1st Cir.1990). Appellant did not sue at that time.

On May 9, 1984, while Jensen's appeal was pending before the ORA, Jensen again contacted an EEO counselor concerning his dismissal. In subsequent informal and formal complaints (the latter dated June 13, 1984), he again alleged that he had been discriminated against because of his national origin. On these occasions, he listed his national origin as simply "Lithuanian" and stated that the incident giving rise to the complaint occurred on April 24, 1984—the date when the post office agreed to reduce the penalty imposed on John Macaruso, another postal employee who had supposedly violated section 661.56.[3] Jensen alleged that the disparity in treatment constituted national origin discrimination because both Macaruso and the Worcester postmaster, Andrew Sacco, were Italian, whereas

---

action, within 30 calendar days of its effective date.
29 C.F.R. § 1613.214 (1983). The regulation was amended slightly in 1987 but, since all the relevant administrative events in this case transpired in the 1983–85 time frame, we refer throughout to the version then in effect.

**2.** Specifically, the rule provides:
No employee while on property owned or leased by the Postal Service or the United States or while on duty will participate in any gambling activity. This includes the operation of a gambling service, conducting or acting as an agent for a lottery or pool, conduct-

ing a game for money or property, or selling or purchasing a numbers slip or ticket.
U.S. Postal Service Employee & Labor Relations Manual § 661.56.

**3.** The same postal inspector who had investigated Jensen's activities uncovered significant evidence that Macaruso had been running a "Super Bowl Pool." On April 17, 1984, the post office issued a notice proposing to strip Macaruso of his position for violating section 661.56. One week later, however, the post office agreed, in the course of a grievance/arbitration proceeding, to reduce Macaruso's penalty to a seven day suspension.

he (Jensen) was Lithuanian. The burden of appellant's complaint was that Sacco, and hence, the postal service, treated Italians more favorably than non-Italians (including Lithuanians).

On August 22, 1984, the postal service rejected the neoteric complaint because it necessarily related back to appellant's own removal in early 1983, and thus, was not seasonably filed. Jensen's appeal to the ORA was overruled on June 26, 1985. He then brought suit. The district court entered summary judgment on the ground that Jensen failed to contact an EEO counselor within 30 days of receiving notice that he would be removed from the postal service. This proceeding ensued.

## II. THE DISCRIMINATION CLAIM

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In deciding such a motion, it is incumbent upon the district court to consider the record in the light most flattering to the nonmovant, "indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). We, in turn, apply the same standard, vacating a grant of summary judgment if we determine that issues of fact, adequately raised and documented below, need to be resolved before the dispositive legal issues can be adjudicated. *Mack v. Great Atlantic & Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). Issues of timely filing may be decided under Rule 56 if the relevant facts are sufficiently clear. *See Doyle v. Shubs,* 905 F.2d 1, 1 (1st Cir.1990) (per curiam); *Kali Seafood, Inc. v. Howe Corp.,* 887 F.2d 7, 9 (1st Cir.1989); *Mack,* 871 F.2d at 181.

Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal district court. *See Brown v. General Services Admin.,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). The law is clear that a federal employee filing a Title VII action must contact an EEO counselor within 30 days of the event that triggers his claim. *See* 29

C.F.R. § 1613.214, *supra* note 1. Jensen concedes that no discriminatory act occurred within 30 days next preceding June 22, 1983 (the date of his initial contact with an EEO counselor). Although he did not timely engage the gears of administrative relief at that point—or, for that matter, sue within the prescribed period—Jensen could still defeat the motion for summary judgment in one of two ways: by raising a litigable fact question as to whether he suffered discrimination at defendant's hands within the 30 days prior to May 9, 1984 (the date he recontacted the EEO); or, given that the 30–day rule is not jurisdictional, by showing that facts existed which, if believed, would justify tolling the 30–day look-and-see period, and the prescriptive period regarding suit, vis-a-vis the original "violation." *See Mack,* 871 F.2d at 181–82.

Jensen tries valiantly to climb this mountain. First, he argues that the disposition of Macaruso's case on April 24, 1984 was the matter that gave rise to his suspicions, thereby triggering his claim and rendering his May 9 complaint timeous. Second, he contends that, because Sacco actively misled him concerning the true basis for his ouster, the limitation period should have been tolled until Macaruso's case had ended (before which time Jensen claims he had no reason to believe that he had been fired for discriminatory reasons). Third, Jensen asseverates that he was the victim of a continuing violation which persisted until the Macaruso affair ran its course. These pitons notwithstanding, he cannot scale the heights.

### A. *Triggering Event Theory.*

█ It is unarguable that no triggering event took place within the 30–day period immediately preceding April 24, 1984. The only occurrence during this period to which Jensen points is the denouement of the Macaruso affair. Whatever role discrimination may have played in Sacco's treatment of Macaruso, pro or con, this event had no adverse effect on Jensen—who, after all, had been cashiered many months earlier. That ends the matter: favoritism of X, at Y's expense, may confer a cause of

action on Y; but favoritism of X, not directly affecting Y, no matter how distasteful, is not actionable in a disparate treatment case brought on Y's behalf. *Cf., e.g., Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 57–58 (1st Cir.1990) (discharged employee cannot sue under first amendment based on discrimination directed at a third party).

It is clear that, well before Macaruso settled his differences with the post office, appellant knew enough (or thought he knew enough) to charge, administratively, that Title VII had been transgressed. The prescriptive look-and-see period had, therefore, begun to run. At the most, the Macaruso affair gave rise to useful evidence which might have been pertinent to Jensen's case, had one been pending. The incident cannot, however, be viewed, as actionable conduct vis-a-vis appellant or as a distinct violation of appellant's long-expired rights.

### B. *Equitable Tolling Theory.*

By the same token, there was no basis for a claim of equitable tolling. Jensen argues that the district court should have relaxed the look-and-see period because he could not have learned the true motive underlying his discharge until the culmination of the Macaruso arbitration. The problem was exacerbated, Jensen contends, because the post office engaged in affirmative misconduct, e.g., misrepresenting the ground for cashiering him and delaying Macaruso's arbitration until the employment decision in Jensen's case had become final and unappealable.

This court has respected Title VII's temporal strictures, and, accordingly, has taken a narrow view of equitable modification in Title VII cases. To qualify for an exception, a complainant must allege and prove, at the least, not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively misled him and that he relied on the (mis)conduct to his detriment. *See Mack*, 871 F.2d at 185; *Earnhardt v. Puerto Rico*, 691 F.2d 69, 71 (1st Cir.1982).

Although citing a pretextual basis for discharge may conceivably constitute active misleading in certain instances, *see, e.g., Rivera–Gomez v. de Castro*, 843 F.2d 631 (1st Cir.1988), *opinion after remand*, 900 F.2d 1 (1st Cir.1990), that question is not before us; in this case, the record simply will not permit a finding either that Jensen was deceived or that he was oblivious to his employer's motivations until the Macaruso affair blossomed. Indeed, well before Macaruso's bargain was struck, Jensen told the EEO counselor, in writing, that his nationality was Lithuanian and Italian, and that he had been discriminated against because of his "national origins." However available equitable modification may be to those who are unaware and actively misled, Jensen's own words make it abundantly clear that he was neither. In a nutshell, even if the postal service tried to throw appellant off the track—and we do not suggest such was the case—it is apparent that he was not bamboozled. His equitable tolling argument, therefore, collapses of its own weight. *See, e.g., Heideman v. PFL, Inc.*, 904 F.2d 1262, 1266–67 (8th Cir.1990) (to justify equitable tolling, employer's attempt to mislead employee must have succeeded); *Rivera–Gomez*, 900 F.2d at 3 (equitable tolling depends on plaintiffs' ability to show "that defendant knew the true facts but kept them hidden; and that plaintiffs, actively misled by defendant, relied to their detriment"); *Mack*, 871 F.2d at 184–85 (similar); *see generally K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 912 (1st Cir.1989) (detrimental reliance is an essential element of equitable estoppel).

In his brief, Jensen asserts that, even though he alleged discrimination on the basis of national origin in June 1983, he could not have discerned Sacco's bias in favor of Italians and against non-Italians until the Macaruso affair. But, this argument is a mere heuristic, confusing notice with evidence and overlooking the very purpose of the administrative requirement that timely contact be made. Not knowing every detail of a suspected plot cannot excuse a discharged employee for sleeping upon his rights. It can ordinarily be assumed "that many facts will come to light

after the date of an employee's termination, and indeed one purpose of a charge and a complaint is to initiate the process of uncovering them." *Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir.1990). What matters is whether, when, and to what extent the plaintiff was on inquiry notice. *See id.*

Jensen's original administrative complaint, based upon what he knew from the start, alleged that he was discriminated against because he was part Italian and part Lithuanian. Thus, he claimed knowledge of suspected bias—and he acted upon that knowledge. Had he brought this complaint to the attention of an EEO counselor in a punctual fashion, the counselor might well have inquired into discrimination *against* Italians at the post office, thereby uncovering evidence of an opposite bias, if it existed. In other words, whether or not Jensen was actually aware of bias against persons whose lineage was other than "pure" Italian before the Macaruso affair, his own actions make manifest that he possessed sufficient knowledge, well in advance thereof, to have set the investigatory apparatus in motion. *See id.* at 202 ("It is not necessary to the filing of a charge [with an EEO counselor] that one possess a proven case."). The resolution of Macaruso's troubles was, at most, evidence bearing upon Jensen's earlier point.

Employers as well as employees are entitled to procedural safeguards in the precincts patrolled by Title VII. To permit appellant to proceed on the basis of Macaruso's case when appellant effectively waived his own complaint by not filing on time, and then not suing, would allow him to make an unwarranted end run around the carefully constructed time constraints of the regulatory scheme. The Court has taught that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded" even in sympathetic circumstances. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (refusing to invoke equitable tolling in Title VII case). Here, the circumstances are not particularly sympathetic; Jensen has offered no cogent explanation as to why he waited so long beyond the stipulated period before moving forward. The district court, on an "independent review" of the timeliness issue, *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1017 (1st Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980), correctly concluded that plaintiff had presented no facts sufficient to toll the applicable limitation period.

## C. Continuing Violation Theory.

The final string to Jensen's bow is equally flaccid. There are two kinds of continuing violations: serial violations and systemic violations. *See Mack*, 871 F.2d at 183 (explicating taxonomy and describing categorical differences). We see no evidence of either in this situation.

■ 1. *No serial violation.* It is nose-on-the-face plain that appellant has not shown a serial violation. Such a violation is composed of a number of discriminatory acts emanating from the same discriminatory animus, each act constituting a separate wrong actionable under Title VII. *Id.* In other words, a serial violation is "continuing" by virtue of the fact that it keeps happening, *see, e.g., Green v. Los Angeles County Supt. of Schools*, 883 F.2d 1472, 1480 (9th Cir.1989) (serial violation contemplates "demonstrating a series of related acts against a single individual")—an employee, say, is passed over several times for promotion, based on the same (actionable) animus. Appellant's removal was a single, distinct act, unrepetitive in nature, not of this genre.

■ Moreover, a serial violation, to be actionable, requires the complaining party to demonstrate "that *some* discriminatory act transpired within the [limitation period]." *Mack*, 871 F.2d at 183; *see also Cajigas v. Banco de Ponce*, 741 F.2d 464, 469–70 (1st Cir.1984) (per curiam); *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C.Cir.1982); *Goldman*, 607 F.2d at 1018–19. The interdicted act must constitute discrimination *as to the plaintiff.* As already discussed, *see supra* Part II(A),

this burden is too heavy for Jensen to lift: no such actionable occurrence took place.

It is beside the point that Jensen continued to feel the effects of the firing in 1984 and beyond. In general, Title VII's temporal restrictions are measured from the occurrence of a triggering event; that the event's sequelae linger does not coterminously extend the limitation period. In the rather modest garden where continuing violation jurisprudence may lawfully flourish, courts must be careful to differentiate between discriminatory acts and the ongoing injuries which are the natural, if bitter, fruit of such acts. *See, e.g., Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (distinguishing between discriminatory denial of tenure and the inevitable future loss of the docent's teaching position); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557–58, 97 S.Ct. 1885, 1888–89, 52 L.Ed.2d 571 (1977) (distinguishing between a past discriminatory discharge and the present application of a non-discriminatory seniority policy which gives present effect to the past act).

2. *No systemic violation.* Appellant has likewise failed to establish the rudiments of a systemic violation. By contrast with a serial violation, a systemic violation need not involve an identifiable, discrete act of discrimination transpiring within the limitation period. *See Mack*, 871 F.2d at 183. A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint. *See id.; see also Green*, 883 F.2d at 1480; *Johnson v. General Elec.*, 840 F.2d 132, 136–37 & n. 5 (1st Cir.1988); *Velazquez v. Chardon*, 736 F.2d 831, 833 (1st Cir.1984).

Appellant takes nothing by this distinction. While Jensen points to a single instance wherein he claims that an employee of "pure" Italian heritage was treated more favorably than was Jensen himself, that is not enough. A single instance of favoritism, even if proved, falls considerably short of showing an ongoing pattern and practice dating back to the time of Jensen's removal. *See, e.g., Mack*, 871 F.2d at 184 (discussing proof required to show systemic violation); *EEOC v. Penton Indus. Pub. Co.*, 851 F.2d 835, 838 (6th Cir.1988) (systemic violation necessitates more than "merely the occurrence of an isolated incident of discrimination"); *cf.* Aristotle, *Nicomachean Ethics*, vol. I, ch. 7 ("One swallow does not make a summer."). Absent any probative evidence of an overarching policy or practice of discrimination, this argument cannot stay the swing of the summary judgment ax.[4]

## III. THE SANCTIONS REQUEST

Jensen's challenge to the district court's refusal to impose sanctions under

---

4. Because this case can be resolved on the paucity of appellant's proffer, we need not speculate as to whether a discharge can ever form the basis of a continuing violation. We note, however, that a number of courts have concluded that a discharge cannot fill such a role. *See Collins v. United Air Lines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir.1975); *cf. Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) ("continuing violations are most likely to occur in the matter of placements or promotions"), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *see generally* B. Schlei & P. Grossman, *Employment Discrimination Law* 397 & n. 35 (Supp.1989). A principle justification underlying these decisions stems from the fact that an employer is entitled to treat a past act as lawful after the employee fails to file a charge within the limitation period. *See Evans*, 431 U.S. at 558, 97 S.Ct. at 1889.

Were a former employee permitted to challenge his dismissal on the basis of an allegedly ongoing discriminatory policy at any time, the limitation period would be rendered meaningless. *See Hill v. AT & T Technologies, Inc.*, 731 F.2d 175, 179–80 (4th Cir.1984); *Collins*, 514 F.2d at 596. By the same token, it would seem that an employee who has been discharged would have little or no legitimate need for the prophylaxis of a continuing violation rule; by definition, such an individual has been the victim of a bounded, identifiable act putting him on unambiguous notice that he has been subject to an adverse job action. The firing is the last straw, so it cannot logically be followed by a series of other acts harmful to the complainant; and, because of the firing's finality, the existence of the discriminatory "system" can no longer deter the complainant from seeking his full employment rights.

Fed.R.Civ.P. 16(f) need not detain us long.[5] Specifically, Jensen asserts that the parties were ordered by the magistrate to file all dispositive motions by February 21, 1986, but that the defendant, in flagrant disregard, failed to file his motion for summary judgment until mid–1989. Jensen asked the district court to impose sanctions referable to this unhurried submission, but the court summarily denied the Rule 16(f) motion. Appellant assigns error, urging us to mandate either a preclusionary order or an award of attorneys' fees.

In the first instance, sanctions are a matter for the district court's discretion. *See, e.g., Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1341 (1st Cir.1988). Ordinarily, decisions as to whether sanctions are warranted, and if so, what form they should take, are best left to the trier. *See Anderson v. Beatrice Foods Co.,* 900 F.2d 388, 393–94 (1st Cir.1990). "Because the imposition of sanctions is peculiarly within the province of the court in which the challenged conduct occurs," *id.* at 393, a litigant who seeks reversal of a trial court's decision to refrain from imposing sanctions must shoulder a heavy load.[6]

We have employed an abuse-of-discretion standard in our oversight of trial-level sanctions under Fed.R.Civ.P. 37(b). *See, e.g., Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1081–82 (1st Cir.1989). The drafters of the amendment which spawned Rule 16(f) recommended utilizing the same standard of appellate review. *See* Fed.R. Civ.P. 16 advisory committee notes (district court's action under Rule 16(f) "is reviewable under the abuse-of-discretion standard"). Because Rule 16(f) cross-references Rule 37(b), and, like that rule, is a tool made available to the district court to enhance that court's case-management function, we think the same flexibility is indicated. Accordingly, we hold that a Rule 16(f) determination is reviewable on appeal only for abuse of the trial court's discretion.

In this case, the judge did not overstep his discretion in denying the sanctions request. For one thing, we do not see any violation of the scheduling orders. Jensen's argument fails to apprehend—or at least to admit—that the orders did not specify that all dispositive motions had to be filed by February 21, 1986. Rather, the first order granted the defendant leave to file a "motion to dismiss" by February 14, and the second (amendatory) order simply changed the due date to February 21.[7] No dismissal motion was filed, which in hindsight may be regrettable. Nevertheless, neither order established a deadline for submitting motions for summary judgment or dispositive motions generally. Indeed, the first order provided that no discovery would take place until the court ruled on the anticipated motion to dismiss. This proviso lends support to the conclusion that the order did not establish a cutoff for summary judgment motions; such motions by their nature contemplate that reasonable discovery be indulged. *See, e.g.,* Fed. R.Civ.P. 56(c) (summary judgment motions to be decided, *inter alia,* in light of "the pleadings, depositions, answers to interrogatories, and admissions on file"); Fed.R. Civ.P. 56(e) (affidavits in support of summary judgment may "be supplemented or opposed by depositions [and] answers to interrogatories"); Fed.R.Civ.P. 56(f) (summary judgment motion may be denied, or hearing continued, "to permit ... depositions to be taken or discovery to be had").

For another thing, even if we could somehow torture the language of the

---

5. The rule provides in relevant part:
   If a party or party's attorney fails to obey a scheduling or pretrial order ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).
   Fed.R.Civ.P. 16(f).

6. The load is, of course, somewhat lighter where the district court's discretion has been more closely cabined, as under Fed.R.Civ.R. 11, which makes the imposition of sanctions mandatory if the rule is violated. No such rule is at issue here.

7. In moving for the one week extension, the Postmaster General did describe the court's order as affecting "dispositive motions," but it *does not seem to us* that this loose use of language can alter the reality of the record.

scheduling orders to produce an ambiguity buttressing appellant's point, the district court's denial of the sanctions motion was tantamount to a finding that the filing of the Rule 56 motion did not countervail the orders. Such a finding is entitled to considerable deference. *See, e.g., United States v. Ayer*, 857 F.2d 881, 885 (1st Cir.1988); *Martha's Vineyard Scuba Headquarters, Inc. v. Unidentified, Wrecked and Abandoned Steam Vessel*, 833 F.2d 1059, 1066–67 (1st Cir.1987). On this record, the judge cannot be faulted for reading the scheduling orders to allow the filing of a Rule 56 motion after discovery had been completed.

## IV. CONCLUSION

We need go no further. Jensen may have had a right to be angry when, after he was fired, he learned that Macaruso had succeeded in remaining on the payroll; but by then, Jensen had slumbered so long upon his rights that he had no case. The district court did not err either in granting *brevis* disposition or in refusing sanctions. *Affirmed.*