USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 96-1609 MARYANN E. LAWTON, Plaintiff, Appellant, v. STATE MUTUAL LIFE ASSURANCE COMPANY OF AMERICA, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ _________________________ Roy A. Bourgeois, with whom Nadia R. Totino Beard and __________________ _______________________ Bourgeois, Dresser & White were on brief, for appellant. __________________________ Neil Jacobs, with whom Daniel W. McCarthy and Hale and Dorr ____________ __________________ _____________ were on brief, for appellee. _________________________ December 2, 1996 _________________________ SELYA, Circuit Judge. Plaintiff-appellant Maryann E. SELYA, Circuit Judge. _____________ Lawton alleges that her former employer, defendant-appellee State Mutual Life Assurance Company of America, discriminated against her on account of her gender, in violation of both federal and state law. See 42 U.S.C. 2000e-5 (1994); Mass. Gen. L. ch. ___ 151B, 4(1) (1996). The district court granted summary judgment in the employer's favor. See Lawton v. State Mut. Life Assur. ___ ______ _______________________ Co., 924 F. Supp. 331 (D. Mass. 1996). Lawton appeals. ___ We have long proclaimed that when a lower court produces a comprehensive, well-reasoned decision, an appellate court should refrain from writing at length to no other end than to hear its own words resonate. See, e.g., Ayala v. Union de ___ ____ _____ ________ Tronquistas, 74 F.3d 344, 345 (1st Cir. 1996); In re San Juan ___________ _______________ Dupont Plaza Hotel Fire Litig., 989 F.2d 36, 38 (1st Cir. 1993). ______________________________ Today, we practice what we preach: having read the record and the parties' briefs with care, we affirm the judgment for substantially the reasons elucidated in the opinion below. We add only a few comments. First: The plaintiff claims that her dismissal on First: _____ August 23, 1991, after more than four years in State Mutual's employ, constituted a discriminatory act. In order to prevail on such a claim in an abolition-of-position case here, the defendant contends that its business plan changed, rendering the management post that Lawton occupied anachronistic an ousted employee must adduce some proof that the employer did not treat gender neutrally in arriving at the challenged employment 2 decision. See Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 479 ___ ____ ______________________ (1st Cir. 1993); Holt v. Gamewell Corp., 797 F.2d 36, 37-38 (1st ____ ______________ Cir. 1986). The district court determined that the summary judgment record in this case affords no such substantiation. See ___ Lawton, 924 F. Supp. at 345. The plaintiff disputes this ______ assessment, primarily on the basis that "the sworn testimony of a highly qualified and experienced expert [statistician]" supplies the missing link. This argument confuses prunes with pomegranates. Assuming, arguendo, that the statistician's affidavit is ________ probative at all,1 it proves only that men, on average, earn more in the defendant's employ than women, and that men, on average, are more likely to be promoted than women. Even if these aspersions are taken as true (and, thus, cast certain of the defendant's employment practices into disrepute), salary level discrimination, in and of itself, is not probative of discrimination in layoffs. Indeed, a coldly calculating employer __ _______ might well seek to dismiss its higher-paid employees while retaining their lower-paid counterparts. Therefore, the court did not err in granting summary judgment on the abolition-of- position claim. Second: Prior to filing a Title VII action in a Second: ______ federal district court, a plaintiff must exhaust her administrative remedies. Tight time limits constrain this  ____________________ 1State Mutual hotly contests not only the expert's conclusions, but also his methodology and the adequacy of his data base. We need not resolve this contretemps. 3 protocol. Lawton worked in Massachusetts, and Massachusetts is a so-called "deferral jurisdiction" the commonwealth has its own civil rights statute and agency so exhaustion depends on the filing of a charge with the Equal Employment Opportunity Commission within 300 days of the purported discriminatory act. See 42 U.S.C. 2000e-5(3) (1994); see also Mack v. Great Atl. & ___ ___ ____ ____ ____________ Pac. Tea Co., 871 F.2d 179, 181-82 (1st Cir. 1989) (describing _____________ operation of statutory scheme). Under state law, the timetable is even more compressed. See Mass. Gen. L. ch. 151B, 5 (1996) ___ (providing that an administrative complaint must be filed within six months after the alleged discriminatory act occurs). In this case the plaintiff contends that, in addition to unlawfully cashiering her, the defendant also refused to promote her on several occasions due to her gender. She filed an administrative complaint attacking both the discharge and the failure to promote on February 17, 1992. The first of the withheld promotions took place in 1987, and the other two occurred in 1990.2 Since all the promotions transpired prior to April 24, 1991, more than 300 days elapsed between the last of them and the date of the administrative filing. Thus, they all fell outside the applicable limitations period. The plaintiff tries to detour around this temporal  ____________________ 2The plaintiff makes a halfhearted effort to implicate a fourth (more recent) promotion but, as the district court pointed out, her belated reliance on this incident involving a promotion for which she never applied came too late because, among other things, she never included any reference to it in her administrative complaint. See Lawton, 924 F. Supp. at 338 n.6. ___ ______ 4 barrier. She clings to the notion that her case presents a "continuing violation," thereby allowing her to reach back beyond the normal limitations period to the earlier promotions. See, ___ e.g., Sabree v. United Bhd. of Carpenters and Joiners, 921 F.2d ____ ______ ______________________________________ 396, 400 (1st Cir. 1990) (explicating continuing violation theory); Jensen v. Frank, 912 F.2d 517, 522 (1st Cir. 1990) ______ _____ (same); Mack, 871 F.2d at 182-83 (same). The district court ____ acknowledged the legitimacy of the continuing violation theory, but found it inapplicable to Lawton's circumstances. Lawton, 924 ______ F. Supp. at 339-40. We agree. In general, continuing violations arise in one of two incarnations. The first incarnation encompasses serial violations, that is, violations which comprise a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII. See Jensen, 912 F.2d at 522; Mack, 871 F.2d at ___ ______ ____ 183. To give purchase to this type of continuing violation, at least one act in the series must have occurred within the limitations period. See Mack, 871 F.2d at 183. ___ ____ Lawton cannot clear this hurdle: as we already have indicated, the foregone promotions all occurred more than 300 days before she initiated agency-level proceedings. Her firing (which took place within the 300-day period) does not fill the void: that act is of a wholly different character, and, moreover, it has not been traced to any discriminatory animus. See supra. Common sense teaches that a plaintiff cannot ___ _____ 5 resuscitate time-barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non- discriminatory, non-time-barred act. The other method by which a plaintiff can establish a continuing violation is by demonstrating the existence of a systemic violation. "A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint." Jensen, 912 F.2d at 523. Lawton asserts that she meets this ______ criterion, and that, therefore, her claim is not pretermitted. This assertion cannot withstand scrutiny. First and foremost, the plaintiff never articulated any particular discriminatory policy or practice in the district court. In the absence of such an articulation, her systemic violation claim fails. See Mack, 871 F.2d at 184 (describing the ___ ____ plaintiff's burden to demonstrate that "a discernible discriminatory policy was in effect, and injured her, during the limitations period"). The generalized references made by the plaintiff in the lower court were patently insufficient to satisfy the applicable standard. Confronted with this omission at oral argument before us, the plaintiff's attorney, in what amounts to confession and attempted avoidance, defined the alleged discriminatory policy as "the practice of not open-posting those jobs which are gateways into the mainstream career path [at State Mutual], with the 6 result that those are reserved for the domain of men making decisions about men." This rhetorical flourish comes too late, for the plaintiff did not enunciate the supposed policy in the proceedings below (administrative or judicial). No precept is more firmly settled in this circuit than that theories not squarely raised and seasonably propounded before the trial court cannot rewardingly be advanced on appeal.3 See, e.g., Teamsters, ___ ____ __________ Chauffers, Warehousemen & Helpers Union, Local No. 59 v. _____________________________________________________________ Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); McCoy v. _____________________ _____ Massachusetts Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991), _____________________________ cert. denied, 504 U.S. 910 (1992). _____ ______ In all events, the late-blooming articulation offers too little substance; the stated policy, even if fully considered, would not support the weight of Lawton's case. The record is devoid both of evidence that might explicate the parameters of the policy (e.g., there is no proof as to which positions are "gateways" or how one might distinguish "mainstream career paths"), and of evidence that might show the continued existence of the policy during the limitations period. What is _____________________________ more, there is no evidence that Lawton herself was injured by any such policy during the 300 days preceding her initiation of ____________________________________________________ administrative proceedings. Consequently, she has not ____________________________ established the kind of systemic violation which would permit her to evade the time bar that blocks her path.   ____________________ 3For that matter, the plaintiff did not enunciate the policy in her appellate briefs. This, too, is a disqualifying factor. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990). ___ _________ ______________ 7 Third: The plaintiff's fallback position is that the Third: _____ district court acted precipitously. She asseverates that her claims should not have been adjudicated on summary judgment, but, at the very least, ought to have gone to trial. This asseveration lacks merit. The proper province of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. _____ Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992), __________________________ cert. denied, 507 U.S. 1030 (1993). Though the district court _____ ______ must "interpret the record in the light most hospitable to the nonmoving party, reconciling all competing inferences in that party's favor," McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. ________ ________ 1995), the nonmovant has a corresponding obligation to offer the court more than steamy rhetoric and bare conclusions. See id.; ___ ___ see also Morris v. Government Dev. Bank, 27 F.3d 746, 748 (1st ___ ____ ______ _____________________ Cir. 1994); Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d ____________ _________________________ 5, 7-8 (1st Cir. 1990). This principle is accentuated where, as here, a Rule 56 motion targets an issue on which the nonmoving party must carry the devoir of persuasion. In that setting, the nonmovant must "produce specific facts, in suitable evidentiary form," sufficient to limn a trialworthy issue. Morris, 27 F.3d ______ at 748. Failure to do so allows the summary judgment engine to operate at full throttle. See, e.g., Kelly v. United States, 924 ___ ____ _____ _____________ F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the 8 record is likely to prove fraught with consequence"). The district court faithfully applied these tenets in determining that no genuine issue of material fact loomed in respect to either the abolition-of-position or failure-to-promote claims. Although Lawton labors to show discrepancies here and there, "genuineness and materiality are not infinitely elastic euphemisms that may be stretched to fit whatever pererrations catch a litigant's fancy." Blackie v. State of Me., 75 F.3d 716, _______ ____________ 721 (1st Cir. 1996). On the key factual issue related to her ouster the presence or absence of the requisite discriminatory intent the probative evidence points in only one direction. A factfinder, drawing reasonable inferences from the nisi prius __________ roll, could not conclude without undue speculation that the defendant acted from a gender-based animus in eliminating the plaintiff's job. Thus, brevis disposition was appropriate on ______ that issue. See Medina-Munoz, 896 F.2d at 8 (explaining that ___ ____________ summary judgment may be granted on "intent" issues). So, too, with the promotion-related claims; questions dealing with the applicability and effect of the passage of time on particular sets of facts often are appropriately disposed of at the summary judgment stage, see, e.g., Rivera-Muriente v. Agosto-Alicea, 959 ___ ____ _______________ _____________ F.2d 349, 352 (1st Cir. 1992); Jensen, 912 F.2d at 520, and this ______ case fits snugly within that paradigm.4   ____________________ 4When a defendant moves for summary judgment based in part on a plausible claim that the plaintiff's suit is outlawed by the passage of time, "the onus of identifying a trialworthy issue customarily falls on the plaintiff." McIntosh, 71 F.3d at 33. ________ Here, Lawton has not identified any such issue.  9 Mindful of the district court's more exegetic treatment of these, and other, matters, we need go no further. Affirmed. Affirmed. ________ 10