**Margaret M. MacDOUGALL, Plaintiff,**

v.

**John E. POTTER, Postmaster General of the United States, Defendant.**

Civil Action No. 03–10653–NMG.

United States District Court, D. Massachusetts.

April 7, 2006.

Rayford A. Farquhar, United States Attorney's Office, Boston, MA, for Defendant.

James S. Weliky Messing, Rudavsky & Weliky PC, Boston, MA, for Plaintiff.

Margaret M. MacDougall, Braintree, MA, pro se.

### MEMORANDUM & ORDER

GORTON, District Judge.

In the instant dispute, the plaintiff, Margaret M. MacDougall ("MacDougall"), alleges that she was subjected to sexual harassment by her supervisor, James Kenneally ("Kenneally"), at her place of employment, the United States Postal Service ("the USPS"). MacDougall brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. The defen-

dant, John E. Potter ("Potter"), Postmaster General of the United States, moves for summary judgment. The Court resolves the motion as follows.

## I. *Background*

MacDougall has been employed by the USPS since 1997. She has been acquainted with Kenneally since approximately 1999 and the two enjoyed a positive and professional relationship as colleagues until July, 2000. Problems between MacDougall and Kenneally first arose on July 6, 2000, when MacDougall claims Kenneally approached her after work and professed his love for her. MacDougall states that she told Kenneally she had no interest in him and tried to avoid discussing the subject further. However, MacDougall asserts that Kenneally repeatedly approached her over the next two weeks and spoke in detail about his romantic interest in her.

On July 26, 2000, MacDougall contacted two of her colleagues about the problems she had been having with Kenneally. She claimed that she had to leave work early because he confronted her in her office and once again began telling her about his feelings for her. Her colleagues referred her to the supervisor of her department, Donald Kimball ("Kimball"). Kimball instructed MacDougall to remain away from work until the matter had been addressed. He later met with Kenneally and instructed him to have no further contact with MacDougall. Soon thereafter, Kenneally was transferred to another location, away from MacDougall.

MacDougall returned to work on July 28, 2000. On July 31, 2000, a subordinate assigned to deliver mail to a location typically serviced by MacDougall reported that Kenneally had arranged to be present where MacDougall usually made her deliveries. MacDougall also asserts that Kenneally approached some of her co-workers and declared that he did not care if he lost his job or his family over his feelings for MacDougall.

On August 4, 2000, MacDougall spoke to the area manager for her department with respect to the difficulties she had been experiencing with Kenneally. This resulted in Kenneally receiving a written warning informing him that his continued personal contact with MacDougall was a violation of his duties, and constituted sexual harassment. Kenneally was also told to have no further contact with MacDougall and to undergo retraining in the sexual harassment policies of the USPS.

MacDougall claims that Kenneally made two visits to her workplace on August 11 and 12. MacDougall asserts that these visits had a traumatic effect on her and that USPS management failed to enforce its directive to Kenneally to cease all personal contact with her. She further contends that Kenneally continued to communicate with her colleagues over the next three months and that he persistently requested that they encourage MacDougall to speak with him.

On October 10, 2000, MacDougall asserts that the area manager for her department rescinded the written warning he had previously issued to Kenneally due to his belief that the problem had been resolved. MacDougall claims that she was never contacted to determine if the harassing behavior had, in fact, stopped.

MacDougall was transferred to another location on December 19, 2000. She claims that on December 22, 2000, Kenneally made a visit to her new workplace to check for express mail, something she claims Kenneally had not done before. Because MacDougall's new supervisor had not been informed of the situation between her and Kenneally, Kenneally was allowed

into the building. While there, MacDougall states Kenneally attempted to approach her on the workroom floor and was eventually escorted out of the building after creating a disruption.

Throughout December and January, MacDougall asserts that management repeatedly suggested that she participate in mediation with Kenneally to resolve the problems between them and to facilitate better professional interaction. She reluctantly agreed to attend a mediation session on January 17, 2001, but left soon after arriving when she discovered that 1) no USPS management would be attending, 2) Kenneally was there unescorted and 3) the mediation did not have what she considered to be an appropriately corrective tone. Kenneally allegedly called one of MacDougall's colleagues several times after she had left, demanding to know why she had cancelled the mediation.

On January 21, 2001, MacDougall filed a written complaint with her area manager with respect to the events surrounding the mediation session. Kenneally was again instructed by management to have no direct contact with MacDougall.

MacDougall claims that Kenneally called her at work on February 19, 2001, and again tried to discuss personal issues after asking a series of work-related questions. MacDougall states that she informed her area manager who took no disciplinary action against Kenneally. Soon thereafter, MacDougall contends she initiated proceedings with the Equal Employment Office ("EEO") and also with the police to obtain a restraining order against Kenneally. On February 28, 2001, MacDougall's area manager spoke to her about her pending criminal complaint against Kenneally and suggested that she had misunderstood Kenneally's intentions and that he only wanted to apologize to her.

A hearing was held on MacDougall's criminal complaint against Kenneally on March 8, 2001, and the case was continued without a finding. MacDougall states that the clerk-magistrate warned Kenneally that he could be arrested if he had any further contact with MacDougall. MacDougall's supervisor was made aware of the clerk-magistrate's warning. To date, Kenneally has not had any further contact with MacDougall.

On March 19, 2001, MacDougall filed a workers' compensation claim, alleging anxiety and depression arising from being harassed. Her claim was later published in a regular USPS report addressing workplace injuries. MacDougall filed a formal complaint of discrimination pursuant to USPS EEO procedures on June 11, 2001. Both of these claims were denied.

Kenneally received a promotion as customer service manager on June 15, 2002, and is currently assigned to the Roslindale Post Office. To date, no other disciplinary action has been taken against him with respect to his alleged sexual harassment of MacDougall. Potter has categorically denied all statements and assertions made by MacDougall that concern episodes of purported harassment.

MacDougall filed her complaint with this Court on April 9, 2003. The case was originally assigned to Judge Lindsay but was transferred to this session on June 24, 2004. The defendant moved for summary judgment on September 30, 2005, which the plaintiff opposes.

## II. *Discussion*

### A. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st

Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

In his motion for summary judgment, the defendant makes three principal arguments: 1) plaintiff failed to timely invoke the administrative complaint procedure under Title VII and is now time-barred from doing so, 2) assuming that plaintiff's claim is not time-barred, the defendant is not liable because Kenneally's actions are nei-

ther sufficiently "severe" or "pervasive" to constitute a hostile work environment under Title VII and 3) defendant is not liable for Kenneally's behavior because of the *Ellerth/Faragher* affirmative defense. The Court addresses these arguments in order.

### 1. MacDougall's Exhaustion of Administrative Remedies

■ The defendant's first contention is that MacDougall did not timely exhaust her administrative prerequisites to suit and, therefore, the case should be dismissed on the ground that the Court lacks subject matter jurisdiction. Specifically, the defendant points to 29 C.F.R. § 1614.105(a)(1) which states that a federal employee must initiate contact with an EEO counselor within 45 days of the date of the alleged discrimination. Because MacDougall did not initiate EEO counseling until February 20, 2001, more than 100 days after the alleged harassment, defendant asserts that her claim is time-barred and the Court lacks jurisdiction over it.

The defendant's entire argument with respect to exhaustion of administrative remedies is premised upon the belief that timely exhaustion of remedies is a jurisdictional prerequisite to bringing suit in federal court. Defendant's position is belied by the case law.

■ The First Circuit Court of Appeals has stated that Title VII requires exhaustion of administrative remedies as a condition precedent to suit in federal court. *Jensen v. Frank,* 912 F.2d 517, 520 (1st Cir.1990). Nevertheless, the administrative exhaustion requirements are not jurisdictional and are subject to the defenses of waiver, estoppel, and equitable tolling. *Owens v. West,* 182 F.Supp.2d 180, 191 (D.Mass.2001)(citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

In *Owens*, another session of this Court held that a federal employer waives its affirmative defense of untimely exhaustion when it fails to raise a challenge to timeliness until after a Final Agency Decision ("FAD") on the merits of a complaint. 182 F.Supp.2d at 191. *See also Ester v. Principi*, 250 F.3d 1068, 1071–72 (7th Cir. 2001)("[W]e conclude that when an agency decides the merits of a complaint, without addressing the question of timeliness, it has waived a timeliness defense in a subsequent lawsuit."); *Mercado v. Ritz–Carlton San Juan*, 410 F.3d 41, 45 (1st Cir.2005)(discussing *Ester* and applying its holding).

In this case, the USPS issued an FAD on the merits of MacDougall's complaint on August 6, 2002. Defendant has offered this Court no evidence that he raised the timeliness issue prior to issuance of the FAD. The FAD makes no mention of any such argument but rather addresses the merits of the plaintiff's complaint. Thus, this Court finds that the defendant has waived its right to raise the affirmative defense of untimely exhaustion of administrative remedies and summary judgment will be denied on that ground.

## 2. MacDougall's Claim of Hostile Work Environment

■ The defendant argues that he is entitled to summary judgment because MacDougall was not subjected to an objectively hostile work environment as a matter of law. The First Circuit Court of Appeals has stated:

[T]he question whether the environment is objectively "hostile or abusive" must be answered by reference to "all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 18–19 (1st Cir.2002). Moreover, "subject to some policing at the outer bounds", it is the unique province of the jury to weigh those factors and decide whether "the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." *Id.*

The crux of the defendant's argument is that whatever harassment MacDougall was subjected to, none of it was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. The defendant argues that despite MacDougall's subjective belief that her work environment was hostile and offensive, the correct legal standard in Title VII harassment claims is that the environment must be subjectively *and* objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). In this case, defendant contends that regardless of MacDougall's interpretation, reasonable people would not perceive her work environment to be abusive or hostile and, therefore, summary judgment is appropriate.

In light of the First Circuit's conclusion in *Marrero*, the defendant faces a decidedly uphill struggle in his effort to convince this Court that, as a matter of law, plaintiff's Title VII claim should not be left to the jury's reasoned consideration. MacDougall has alleged that Kenneally: 1) approached her at work to declare his love for her, 2) initiated conversations with her purportedly to apologize but then again declaring his feelings for her, making statements that he'd been "in love" with her for two years and that he "woke up

thinking he was in bed next to her", 3) staked himself out at MacDougall's workplace in the hope of encountering her, 4) contacted her by telephone and again attempted to discuss his feelings and 5) attempted to induce MacDougall's colleagues and friends to arrange meetings between him and MacDougall so that he could explain himself.

Beyond those allegations, MacDougall's issues with Kenneally spilled over into her relations with other employees. For example, when Kenneally was transferred from the Wollaston location on July 27, 2000, his departure was left unexplained by the management, which MacDougall claims subjected her to an atmosphere of suspicion from co-workers who "suspected she had engineered [the transfer] without legitimate reason." In January, 2001, at Kenneally's request, MacDougall's supervisor arranged a meeting with MacDougall for the stated purpose of reprimanding Kenneally. Nevertheless, according to MacDougall, the meeting soon became yet another opportunity for Kenneally to explain himself to her and, after she left the meeting, Kenneally "repeatedly" tried to reach her on the telephone.

One issue not mentioned by the defendant in his motion for summary judgment is MacDougall's criminal harassment complaint against Kenneally. The clerk-magistrate who heard the complaint instructed Kenneally to have no further contact with MacDougall or risk arrest. That warning became known to MacDougall's supervisor. Although this evidence has no dispositive bearing on a claim of sexual harassment under Title VII, it allows the Court to infer, nevertheless, that MacDougall's allegations are sufficiently serious, that she did subjectively view her workplace as hostile and that reasonable jurors could find the alleged offensive conduct by Kenneally

towards her to have been objectively severe and pervasive.

Defendant disputes many of the plaintiff's factual allegations or portrays them in a less nefarious light. However, it is precisely that factual disagreement between the parties that makes this Court's disinclination to enter summary judgment all the more appropriate.

■ The defendant argues that MacDougall's claim lacks the indicia of traditional Title VII harassment claims such as offensive touching or overly lewd and lascivious conduct. In this respect, this Court concedes readily that MacDougall's claim may be a weak one as Title VII claims go. Nevertheless, there is no requirement that sexual harassment be "sexual" in nature to be actionable under Title VII. Rather, the critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 126 L.Ed.2d 295 (Ginsburg, J., concurring). *See also Ellison v. Brady,* 924 F.2d 872, 880 (9th Cir.1991)(finding that a reasonable woman could have considered behavior by a co-worker who asked the plaintiff out on three occasions and wrote her love letters to be sufficiently severe and pervasive because the plaintiff "had no way of knowing what [co-worker] would do next"). It is for a jury of MacDougall's peers to determine whether the facts in this case give rise to a claim under Title VII, not this Court. Thus, summary judgment will be denied on this ground.

### 3. The *Ellerth/Faragher* Affirmative Defense

■ When sexual harassment by a supervisor does not culminate in a tangible employment action, a defending employer may raise an affirmative defense to liabili-

ty, subject to "proof by a preponderance of the evidence." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. The employer must show: 1) that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior" *and* 2) that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

■ This has become known as the *Ellerth/Faragher* defense, so-named after two decisions announced on the same day in 1998 by the Supreme Court that outlined an employer's affirmative defense to vicarious liability under Title VII. Those companion cases are *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 763, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Failure to prove any element of the defense defeats the entire defense. MacDougall was not subject to an adverse employment action, thus, Potter must demonstrate that there is no genuine issue as to any material fact with respect to *both* prongs of the *Ellerth/Faragher* defense and that he is entitled to judgment as a matter of law on this affirmative defense.

With respect to the first prong of *Ellerth/Faragher*, the defendant must demonstrate that he exercised reasonable care to prevent and correct promptly any sexually harassing behavior. The Supreme Court held in *Faragher* that proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant with respect to the first element of the defense. *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

In *Reed v. MBNA Marketing Systems, Inc.*, 333 F.3d 27 (1st Cir.2003), a female employee alleged that her supervisor sexually harassed and assaulted her. The defendant had a policy against sexual harassment, provided sexual harassment orientations, posted anti-harassment posters and had a procedure that instructed employees to present complaints either to their manager or directly to the company's personnel department. *Id.* at 34. When the defendant learned of the supervisor's conduct, it immediately started an investigation and removed the supervisor. *Id.* The First Circuit found that, on that evidence, the first prong of the *Ellerth/Faragher* defense had been satisfied. *Id.* at 35.

In the case at bar, MacDougall does not dispute that the USPS had a written sexual harassment policy with a complaint procedure which was disseminated in several forms. MacDougall recognized and acknowledged that she had seen or was aware of dissemination of the policy by the USPS in the following forms during the period relevant to her allegations: 1) USPS Policy on Sexual Harassment (poster), 2) Employees Guide to Understanding Sexual Harassment (publication), 3) Postal Service Policy on Sexual Harassment (bulletin) and 4) sexual harassment prevention talk (service talks). The documents and service talks instruct postal employees to report allegations of sexual harassment to *any* supervisor, manager or to Human Resources. In addition to speaking to management, the policy informs employees of their right to file an EEO complaint.

The plaintiff's principal contention is that, despite the existence of a sexual harassment policy, it is the obligation of the defendant to prove that the policy was effective in order to satisfy the first prong of the *Ellerth/Faragher* defense. MacDougall argues that the defendant has offered no evidence that the USPS required that the documents be used, had any system to ensure that the posters and other written statements were disseminated to all employees, performed training to en-

sure that employees actually understood sexual harassment and its consequences or had a system of accountability to determine the level of compliance with the policy. MacDougall asserts in her memorandum that there was no system for monitoring and insuring compliance with the sexual harassment policies and procedures of the USPS, leading to the conclusion that the "defendant had no *way of knowing* whether its policies for harassment prevention were worth more than the paper they were printed on."

MacDougall's criticisms are marginal at best. The defendant's anti-harassment policy with complaint procedure appears to satisfy the Supreme Court's guidelines for preventing and correcting sexual harassment in the workplace. The instant case is distinguishable from those in which courts have found the defendant failed the first prong. *See, e.g., Faragher,* 524 U.S. at 782, 118 S.Ct. 2275 (defendant failed to disseminate sexual harassment policy to plaintiff's place of employment); *Marrero,* 304 F.3d at 21 (defendant ignored plaintiff's request for a copy of its antidiscrimination policy and a dispute existed with respect to whether plaintiff was ever fully aware of complaint procedures. Here, defendant publicized the USPS anti-harassment policy and procedures and MacDougall's own complaint describes the defendant's dissemination of that policy to USPS managerial employees through documents and training.

Nevertheless, the question remains, with respect to the first prong of the defense, whether the defendant acted promptly to correct the harassment MacDougall suffered. The defendant argues that the USPS responded promptly to MacDougall's allegations of sexual harassment as evidenced by the decision to relieve Kenneally of his responsibilities in the Wollaston branch within 24 hours of receiving notice of his conduct towards MacDougall, transferring him to the South Weymouth Post Office, ordering him to avoid contact with MacDougall and, through written communication, threatening him with disciplinary action should his conduct persist.

MacDougall responds that whatever corrective actions the defendant took against Kenneally, they utterly failed to actually correct the harassment. She claims that the area manager took no corrective action after Kenneally disobeyed his instructions not to appear at MacDougall's workplace and failed to discipline him for trying to get in contact with MacDougall to discuss his feelings. MacDougall takes issue with the manager's decision to rescind Kenneally's discipline order despite her persistent complaints and the manager's decision to withhold information in Kenneally's performance evaluation, covering the relevant time period, about his alleged harassment of MacDougall. Furthermore, she reacted quite negatively when the defendant published in March, 2001, a report of workers' compensation claims to all management officials, including Kenneally, that described her as suffering from anxiety and depression as a result of sexual harassment.

There appears to be little doubt that the defendant moved swiftly to address the situation between MacDougall and Kenneally when it was first brought to his attention in July, 2000, as evidenced by the prompt transfer of Kenneally to another post office branch. Rather, the factual dispute concerns whether or not the defendant's conduct after that initial action qualifies as corrective action. Indulging all inferences in MacDougall's favor, this Court cannot say that there is no genuine dispute as to materials facts concerning whether the defendant failed to correct the harassment promptly. Thus, because factual questions remain with respect to the

first prong of the *Ellerth/Faragher* affirmative defense, summary judgment on the basis of that defense will be denied.

Although the Court need not proceed any further given that failure to prove any element of the defense defeats the entire defense, it notes that the defendant has also failed in his argument with respect to the second prong of the defense. Under the second prong, the defendant must prove that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. The defendant asserts that: 1) MacDougall waited an unreasonable amount of time after the start of the harassment to make her first report, 2) her manager did not receive any complaints from her between August, 2000, and January 17, 2001, and 3) MacDougall waited until February 20, 2001, to file an EEO complaint.

Kenneally made his initial declaration to MacDougall on July 6, 2000. She allowed a mere nine work days to pass between that entreaty and her complaint to a supervisor on July 20, 2000. That delay cannot, on its face, be considered an unreasonable one. Moreover, MacDougall's reasons for hesitating initially are understandable. Kenneally was well liked and friendly with upper management. It is also not unreasonable to believe that MacDougall regarded Kenneally's first advance as an isolated incident. Ultimately, it is not for this Court to say whether the delay was reasonable or not but rather it is for the considered judgment of the jury.

Moreover, the area manager's claim that MacDougall did not complain to him about Kenneally's behavior between August, 2000, and February 19, 2001, is in direct contradiction with MacDougall's claim that she complained to him on several occasions in that space of time. A determination of the credibility of the witnesses will be left to the jurors.

Finally, the failure of MacDougall to file an EEO complaint until February 20, 2001, has no bearing on whether she unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. The justification behind the second prong of the *Ellerth/Faragher* defense is not to punish plaintiffs for being dilatory but to insure that damages are not awarded for any harm that is avoidable. *Greene v. Dalton,* 164 F.3d 671, 674 (D.C.Cir.1999). MacDougall has demonstrated that she took advantage of corrective opportunities presented by her employer's sexual harassment policy and procedures. She placed her faith in those internal systems to resolve her issue. Only later when she realized that USPS procedures would not be enough to bring closure to the matter did she file her EEO complaint.

Defendant has failed to present sufficient evidence to justify summary judgment. The issues raised by the defendant are, for the most part, factual in nature and best left to the consideration of jurors. This Court will not short-circuit their judgment.

## ORDER

In accordance with the foregoing, Defendant's Motion for Summary Judgment (Docket No. 25) is **DENIED.**

**So ordered.**