Charles A. PRESTO, Plaintiff,

v.

SEQUOIA SYSTEMS, INC., Alfred Deimaggi, Michael Ritchay, Defendants.

Civ. A. No. 85–1461–Y.

United States District Court, D. Massachusetts.

April 18, 1986.

James E. Wallace, Jr., Paul T. Hempel, Bowditch & Dewey, Worcester, Mass., for plaintiff.

Harry Daniels, Hale & Dorr, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This case arises out of an alleged breach of an employment contract. Jurisdiction exists under 28 U.S.C. § 1332. The plaintiff, Charles A. Presto ("Presto"), alleges that the defendant Sequoia Systems, Inc. ("Sequoia"): (1) breached the employment contract between Sequoia and Presto (Count I); (2) made false representations to Presto so as to induce him to accept employment with Sequoia, thereby causing Presto to rely on these misrepresentations and causing him injury (Counts II and III); (3) breached an implied contractual covenant of good faith and fair dealing (Count IV); (4) wrongfully terminated Presto's employment (Count V); and that the defendants Alfred Deimaggi ("Deimaggi") and Michael Ritchay ("Ritchay") intentionally interfered with Presto's advantageous contractual relations (Count VI).

The defendants have moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), alleging that the Court lacks jurisdiction due to the exclusivity provisions of the Massachusetts Workers' Compensation Law, G.L. c. 152 § 24, and that plaintiff has failed to state a claim for which relief may be granted.

For the reasons discussed below, the defendants' motion is granted in part and denied in part.

I.

Presto has alleged the following facts, which are accepted as true for the purposes of this motion: At all times relevant to this matter, Warren C. Tyler was president and chief executive officer, and Deimaggi and Ritchay were vice presidents, of Sequoia, a Delaware corporation with its principal place of business in Marlboro, Massachusetts. Presto was and is a resident of Georgia.

Sometime prior to April 20, 1984, Presto was interviewed by Tyler with regard to employment with Sequoia as a marketing executive. At that time, Tyler represented: (1) that Sequoia had developed and was marketing successfully an operational product, the "Sequoia Fault Tolerant Computer System"; (2) that Sequoia would employ Presto for a minimum of five years if Presto agreed to relocate from Georgia to the Greater Boston area; and (3) that if Presto accepted the position of vice-presi-

dent, he would receive stock options during the first five years of his employment.

On or about April 20, 1984, Tyler, acting in his capacity as president of Sequoia, sent Presto a written offer of employment regarding the position of vice-president of sales for Sequoia. The offer (referred to in the complaint as the "employment contract") included a first year annual salary of $75,000, a guaranteed bonus of $30,000 "[f]or the first year," paid in equal quarterly installments, and the vesting of an option to purchase Sequoia common stock over a period of five years.

On or about April 27, 1984, Presto accepted Sequoia's employment offer by signing and returning by mail Tyler's April 20, 1984 letter. On May 2, 1984, Presto reported to Sequoia and began work as vice-president of North American Sales. On that same day, Sequoia presented Presto with a copy of Sequoia Systems, Inc. stock certificate (no. 184) for 35,000 shares of common stock, in the name of Charles A. Presto as owner, marked "fully paid" and "non-assessable." The certificate was signed by Tyler as president and John D. Anderson as treasurer and was endorsed with transfer restrictions.

On or about August 13, 1984, Tyler informed Presto that his employment was "not working out" and requested that Presto not report for work further. On or about August 31, 1984, Tyler sent Presto a letter formally terminating Presto's employment effective September 1, 1984. No reason was given for the termination and no compensation was paid to Presto in connection with the termination. On April 18, 1985, Presto filed this action.

## II.

In Count I, Presto seeks contract damages based on the contention that his acceptance noted on Tyler's April 20, 1984 letter formed a contract for a term of five years. The defendants contend that this April 20, 1984 letter is not and cannot reasonably be read to be an agreement to employ Presto for five years absent any such express provision and, therefore,

Presto is an "at-will" employee. In the alternative, the defendants contend that the agreement, if any, is an oral agreement to employ Presto for five years and, therefore, recovery is barred by the Statute of Frauds. Mass.Gen.Laws ch. 259, § 1, Fifth.

■ In Massachusetts, as elsewhere, absent ambiguity, contracts must be interpreted and enforced exactly as written. *Freelander v. G. & K. Realty Corp.*, 357 Mass. 512, 516, 258 N.E.2d 786 (1970). Here, the Court rules that the April 20, 1984 letter agreement is sufficiently ambiguous to withstand summary dismissal. Given that the April 20, 1984 letter is alleged to be a written contract of employment, it is clear that the "complaint should not be dismissed for failure to state a claim [because it does not appear] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir.1976). Therefore, the defendants' motion to dismiss Count I for failure to state a claim upon which relief may be granted is denied.

■ In Count II, Presto alleges that Tyler made false representations to him, viz. that Sequoia had developed and was successfully marketing an operational product, the "Sequoia Fault Tolerant Computer System," and that Sequoia would employ Presto for a minimum of five years if Presto would agree to relocate in the Greater Boston area, and that these misrepresentations were made for the purpose of inducing Presto to accept Sequoia's offer of employment. To withstand a motion to dismiss in an action for fraudulent representation, or deceit, Presto must allege "that [Sequoia/Tyler] made a false representation of a material fact with knowledge of its falsity for the purpose of inducing [Presto] to act thereon and that [Presto] relied upon the representation as true and acted upon it to his damage." *Danca v. Taunton Savings Bank*, 385 Mass. 1, 8, 429 N.E.2d 1129

(1982), quoting from *Kilroy v. Barron,* 326 Mass. 464, 465, 95 N.E.2d 190 (1950). While scienter may easily be inferred from the matters alleged, it is not expressly set forth and, given the requirement that averments of fraud be made with particularity, Fed.R.Civ.P. 9(b), Count II is thus technically defective. Accordingly, it is dismissed unless, within 30 days from the date of this order, Presto moves, consistent with Fed.R.Civ.P. 11, to amend the complaint to supply this averment.

■ Presto alleges an action for estoppel in Count III, claiming that Tyler's representations constituted "[a] promise which [Tyler/Sequoia] should reasonably [have] expected[ed] to induce action or forbearance on the part of [Presto] ...," and that Presto did rely upon Tyler's representations regarding the "Sequoia Fault Tolerant Computer System" and a minimum term of employment of five years, to his detriment. Restatement, Contracts (2d) § 90. In Massachusetts, the "essential factors giving rise to an estoppel are ... (1.) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2.) An act or omission resulting from the representations, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such a person as a consequence of the act or omission." *Cellucci v. Sun Oil Co.,* 2 Mass.App. 722, 728, 320 N.E.2d 919 (1974) (citations omitted), *aff'd,* 368 Mass. 811, 331 N.E.2d 813 (1975). Accordingly, because Presto has alleged facts sufficient to invoke the doctrine of promissory estoppel, the defendants' motion to dismiss as to Count III is denied.

■ In Count IV Presto alleges that Sequoia breached an implied contractual covenant of good faith and fair dealing in that it terminated his employment without cause, in bad faith, and with the intention of depriving Presto of accrued and earned benefits. The defendants contend that Presto has failed to show that Sequoia agreed to employ him for five years or for

any other specified term and, therefore, that Presto is an at-will employee whose employment is freely terminable at any time without cause. Further, the defendants argue that Presto has failed to allege facts such that the termination falls within public policy exceptions to the at-will doctrine recognized by the Supreme Judicial Court. *See Fortune v. National Cash Register,* 373 Mass. 96, 364 N.E.2d 1251 (1977); *Gram v. Liberty Mutual Ins. Co.,* 384 Mass. 659, 429 N.E.2d 21 (1981). As was the case with Count I, however, the letter agreement and Presto's allegations concerning it are sufficient to withstand a motion to dismiss.

In Count V, Presto alleges that Sequoia terminated his employment maliciously, without cause, and in bad faith, and seeks tort damages for lost salary, fringe benefits, bonuses, and Sequoia common stock. In addition, Presto seeks to recover for alleged injury to his reputation, emotional distress, and attorney's fees. In their motion to dismiss, the defendants claim that no cause of action for wrongful termination sounding in tort has been recognized in Massachusetts, and that Presto's prayer for damages for emotional distress is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act, which states in relevant part:

> An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury there in occurring, to recover damages for personal injuries if he shall not have given his employer at the time of his contract of hire, written notice of such right ...

Mass.Gen.Laws ch. 152, § 24. Presto has not alleged that he gave Sequoia any such written notice of his right under the act.

■ Common law actions are barred under the exclusivity provision of Mass.Gen. Laws ch. 152, § 24 only where: (1) the plaintiff is shown to be an employee; (2) his condition is shown to be a "personal injury" within the meaning of the Workers' Compensation Act; (3) the injury is shown to have arisen "out of and in the course of

... employment." *Foley v. Polaroid Corp.*, 381 Mass. 545, 548–49, 413 N.E.2d 711 (1980). *See* Mass.Gen.Laws ch. 152, § 26. Each of these three conditions is satisfied in this case.

First, Presto alleges he was an employee of Sequoia. Complaint ¶ 13. Second, the Supreme Judicial Court in *Foley* made clear that "emotional distress arising out of employment" is a "personal injury" which is compensable under the Workers' Compensation Act. *Id.* at 550, 413 N.E.2d 711; *see Albanese's Case*, 378 Mass. 14, 389 N.E.2d 83 (1979); *Flynn v. New England Telephone Company*, 615 F.Supp. 1205, 1209 (D.Mass.1985). Finally, Presto's own allegations establish that his claims for emotional distress arise out of and in the course of employment. Complaint ¶¶ 17, 27. *See Bertrand v. Quincy Market Cold Storage & Warehouse*, 728 F.2d 568, 572 (1st Cir.1984) ("As the employer's conduct substantially took place while the plaintiff was still an employee, and it explicitly concerned his employment, the plaintiff suffered 'a personal injury arising out of and in the course of his employment ...' M.G.L. c. 152, § 26"). For these reasons, the Court rules that Presto's claims based on emotional distress are barred by the exclusivity provision of the Massachusetts Workers' Compensation Act. Therefore, insofar as Presto seeks to recover for emotional distress, defendants' motion to dismiss is allowed.[1]

1. The amendment of Mass.Gen.Laws ch. 152, § 1, ¶ 7A, by Mass.St.1985, c. 572, § 11, effective on January 1, 1986, Mass.St.1985, c. 572, § 68, casts doubt on the conclusion just expressed. It would appear that, since January 1, 1986, mental and emotional disabilities resulting from the discharge of an employee are *not* within the term "personal injury" as that term is now used in the Workers' Compensation Act, as amended, unless "a contributing cause of such disability is an event or series of events occurring within the employment." The events alleged here, of course, occurred prior to the effective date of this amendment. Still, it appears unlikely that the new Department of Industrial Accidents, taking effect on April 1, 1986, *see* Mass.St.1985, §§ 4, 69, will entertain this claim as a matter of Workers' Compensation.

■ The question remains, however, whether Presto may, consistent with the substantive law of Massachusetts, maintain an action for wrongful termination sounding in tort. The defendants submit that no such cause of action has been recognized in Massachusetts. Presto urges that the claim should not be dismissed in a case where there is a clear wrong but no adequate remedy in contract. He suggests that damages to professional reputation would not be recoverable under a contract theory, nor compensable under the Massachusetts Workers' Compensation Act, *Foley v. Polaroid*, 381 Mass. 545, 551, 413 N.E.2d 711 (1980); *McCone v. New England Telephone & Telegraph Co.*, 393 Mass. 231, 234, n. 8, 471 N.E.2d 47 (1984), and, therefore, if he may not pursue Count V as a tort action, he will be precluded from obtaining relief for alleged injury to his professional reputation as against Sequoia. While the Court finds some merit in this argument, it is not persuaded to adopt Presto's position in light of the lack of applicable precedent and the refusal by one of my colleagues, in analogous circumstances, to infer the existence of such a tort remedy under the common law of Massachusetts. "Rights are not to be determined by playing a game of labels. If the relationship of the parties is such as to support a cause of action in tort, that cause of action is not to be denied because the parties happened also to have made a contract. Conversely, a breach of contract is not, standing alone, a tort as well. And it

It seems anomalous, therefor, to dismiss this claim as exclusively compensable under Workers' Compensation when, today, it appears that no such recovery is authorized. Dismissal is nevertheless appropriate, however, without a detailed analysis of the amended statutory scheme of Workers' Compensation and its relationship to claims accrued yet not adjudicated. This is so because Massachusetts law recognizes no tort whatsoever arising out of the discharge of an employee, *see infra*, unless the circumstances are so extreme and outrageous as to shock the conscience, *Agis v. Howard Johnson, Inc.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976), a claim which cannot be reasonably advanced on the facts alleged here.

cannot be converted into a tort merely by attaching to the contract, or to the breach, new labels that sound in tort. Calling a 'breach of contract' a 'tortious' [wrongful termination] is not more helpful in identifying a ground of tort liability than would be an argument that every breach of contract—or perhaps every willful breach—is a tort. No precedent has been advanced by plaintiff that supports such a proposition." *Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F.Supp. 230, 238 (D.Mass.1983) Therefore, the defendants' motion to dismiss relative to Count V is allowed.

In Count VI, Presto alleges that defendants Deimaggi and Ritchay intentionally and maliciously caused Sequoia to terminate Presto's employment in order to advance their own personal interests and in order to prevent Presto from obtaining vested and non-vested rights to acquire stock. He claims that they viewed his employment as a personal threat to their own positions with Sequoia and viewed the issuance of stock to Presto as a dilution of the value of their own equity in Sequoia. *See* Complaint ¶¶ 44–48. The defendants contend that the actions of Deimaggi and Ritchay, as officers of Sequoia, are privileged and that Presto has failed to allege that malice was their sole motivation in seeking Presto's dismissal.

In *Tye v. Finkelstein*, 160 F.Supp. 666 (D.Mass.1958), Judge Aldrich addressed this issue. With notations to make his language applicable to this case, he said:

> "[Presto] must establish that instead of acting 'within the privilege,' the defendant[s] acted outside of it, that is to say, from 'an improper motive.' ... It is not enough to show that the defendant[s] knew, or intended, that [Presto] would be harmed thereby, or even that [they] were gratified by such a prospect. I hold that 'malice' will not suffice to destroy a privilege unless it is shown to have been the sole motive.... If the defendant[s] acted partly out of ill will toward [Presto], but also in the belief that [they were] serving the corporation, [Presto] cannot

recover...." *Id.* at 668 (footnotes and citations omitted).

Here, Presto has alleged no motivation on the part of Deimaggi and Ritchay other than malice. In particular, Presto alleges that defendants' conduct was "willful, reckless, malicious and unlawful." Complaint ¶ 49. Further, Presto has alleged facts sufficient to permit the inference that neither Deimaggi nor Ritchay were charged with the responsibility of evaluating Presto's performance. Thus, the Court is unpersuaded by the defendants' contention that there is no allegation that Deimaggi and Ritchay acted outside the scope of their employment, as unlawful conduct cannot reasonably be construed to fall within the scope of an employee's duties. Hence, the Court finds that Presto has properly pleaded facts sufficient to withstand a motion to dismiss as to Count VI.

The Court notes that Presto seeks to recover for reasonable attorney's fees in each of the six counts. The Supreme Court has held, absent statutory provision to the contrary, that the prevailing party in litigation generally is not entitled to recover attorney's fees. *Alyeska Pipeline Service Co. v. Wilderness Society et al.*, 421 U.S. 240, 247–71, 95 S.Ct. 1612, 1616–28, 44 L.Ed.2d 141 (1975). Therefore, insofar as Presto prays for recovery of attorney's fees, the motion of the defendants to dismiss is granted.

For the reasons stated above, Count II will be dismissed in 30 days unless the requisite motion to amend is filed, Count V is dismissed in its entirety, as are the prayers for attorney's fees. The Motion is otherwise denied.