**Laurie A. LEGOFF, Plaintiff,**

v.

**TRUSTEES OF BOSTON UNIVERSITY, Averill C. Haines, and Gary Strickler, Defendants.**

No. Civ.A. 97–11981–NG.

United States District Court, D. Massachusetts.

Sept. 28, 1998.

Jeffrey P. Petrucelly, Petrucelly & Nadler, Boston, MA, for Laurie A. Legoff, plaintiff.

Lawrence S. Elswit, Office of the General Counsel, Boston, MA, for Boston University, defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

Plaintiff, Laurie LeGoff ("LeGoff") brought this action against defendants, the Trustees of Boston University ("the University"), Averill C. Haines ("Haines"), and Gary Strickler ("Strickler"), alleging that they violated her rights under the Equal Pay Act ("EPA") and Title IX of the Education Amendments Act of 1972 ("Title IX"). She also brings three pendant common law claims of constructive discharge, negligence, and tortious interference with advantageous relations. The defendants move this Court to dismiss this action arguing that all of the plaintiff's claims are time-barred. For the reasons set out below, the defendants' motion is **DENIED**.

1. The University argues that the plaintiff's employment ended on August 21 or 22, 1994, the date on which she sent her supervisor a letter apparently expressing her intent to resign. Le-

## I. FACTS

On a motion to dismiss, I must take as true all of the allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Northeast Doran, Inc. v. Key Bank of Maine*, 15 F.3d 1, 2 (1st Cir.1994). Therefore, the following facts are stated as presented by LeGoff.

LeGoff filed a complaint with this Court on August 29, 1997, against the University, Haines, and Strickler. On December 10, 1997, she filed an amended complaint.

In her amended complaint LeGoff asserts that defendants (1) violated her rights under the Equal Pay Act (EPA), 29 U.S.C. § 206(d), by willfully and intentionally discriminating against her on the basis of sex by paying her unequal wages and (2) violated her rights under Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, by discriminating against her on the basis of sex.

This action stems from events that occurred while LeGoff was employed as head softball coach and assistant field hockey coach at the University. LeGoff was hired by the University beginning in August 1989 under a ten month contract, paid over twelve months. LeGoff's employment continued, she asserts, until August 31, 1994.[1] As University policy is to pay employees once a month at the end of the month, the defendants concede that she probably was sent her last paycheck on that date.

During her employment at the University, LeGoff argues, the University discriminated against her on the basis of sex by paying her at a lesser rate and giving her more responsibilities than men in the department. No male coaches were required to coach two sports at the same time.

In May 1992, the plaintiff approached Strickler, the University's Athletic Director, regarding her lower rate of pay and greater job responsibilities than her male counter-

Goff denies, however, that this was a resignation letter. As discussed below, for the purposes of a motion to dismiss, I must accept LeGoff's version of her termination date.

parts. Strickler said he would look into this discrepancy but in fact took no action to correct it. Following this initial exchange, Strickler and LeGoff continued to discuss the disparity in wages and job duties between male and female coaches until the plaintiff was allegedly pressured to resign just over two years later.

In July 1994, LeGoff spoke with Haines, the Assistant Athletic Director, about the disparity in wages and job duties between herself and her male colleagues. In the same meeting, LeGoff also stated that "someone should seek relief outside of Boston University." (Complaint, ¶ 11). Haines responded that if LeGoff filed a formal complaint about the matter either within or outside the University, she would be terminated from her employment and "would never work in the Northeast again." (Id.)

LeGoff alleges that as a result of the University's failure to alter the terms and conditions of her employment to make them equal to those of her male colleagues, as well as Haines' threat to fire her should she formally complain, She was "forced to resign" effective August 31, 1994. (Complaint, ¶ 12).

After resigning, the plaintiff learned that the University had made her former position into two separate jobs as the result of an investigation by the Office for Civil Rights of the U.S. Department of Education (OCR). In November, LeGoff applied for one of these positions but was rejected, despite her five-year record of successful coaching and positive performance reviews. LeGoff argues that the University did not hire her because of her prior complaints to Strickler and Haines about the defendants' discriminatory acts.

LeGoff alleges that since her employment at the University, she has been unable to secure employment at any educational institution.

## II. *DISCUSSION*

Now before the Court is the defendants' motion to dismiss. Defendants allege that all counts set forth by the plaintiff are time-barred by the appropriate statute of limitations period. In her opposition to the motion

to dismiss, LeGoff asserts that her August 29, 1997 complaint was timely, given that the violations continued until her employment ended on August 31, 1994. Her retaliation claim, moreover, is based on the defendants' failure to rehire her in November 1994, less than three years prior to the filing of the complaint.

Fed.R.Civ.P. 12(b)(6) requires that the Court "take the well-pleaded facts as they appear in the complaint, extending plaintiff every reasonable inference in [her] favor." *Pihl v. Massachusetts Dept. of Educ.*, 9 F.3d 184, 187 (1st Cir.1993). A motion to dismiss should be granted " 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.' " *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir.1992) (quoting *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)).

As each count of the plaintiff's complaint is governed by a different statute of limitations, I will address each in turn. There is, however, a common threshold issue with respect to all but the Equal Pay Act claim: when LeGoff's employment at the University ended.

LeGoff asserts in her complaint that she was employed by the University until August 31, 1994, so that any discrimination that continued until the end of her employment would have occurred within three years of her August 29, 1997, filing date. The defendants, on the other hand, urge me to convert their motion to dismiss into a motion for summary judgment and to take into consideration two documents they have submitted, a letter from LeGoff to Strickler, dated August 22, 1994, which expresses her intent to resign from the University, and LeGoff's complaint to the E.E.O.C., which lists her "constructive discharge" as occurring on August 21.

Both of the documents offered by the defendants suggest that LeGoff's employment ended prior to August 29, 1994, and thus more than three years before she brought this suit. Their meaning and their accuracy, however, have been disputed by LeGoff. She asserts that the letter to Strickler was an expression of her anguished indecision about whether to continue at the University,

while the date in the E.E.O.C. complaint was merely a typographical error. LeGoff further muddies the waters by submitting a memo from Strickler, dated August 23, 1994, which she characterizes as demanding her decision about whether to continue at the University, but which appears on its face to inform her that she has been terminated.

I decline to convert the defendants' motion to dismiss into a motion for summary judgment on the basis of such a record. Such crucial factual disputes are best reserved for summary judgment or trial, not prematurely disposed of on the basis of three disputed documents. Therefore I must take all of LeGoff's allegations as true and treat the final date of her employment with the University as August 31, 1994.

## A. *Equal Pay Act Claim*

■ The purpose of the Equal Pay Act (EPA) is to prohibit employers from discriminating in the payment of wages on the basis of sex. 29 U.S.C. § 206(d)(1). To establish a *prima facie* case under the EPA "a plaintiff must show that her employer was subject to the Act, and that she was paid less than her male counterparts who were performing work requiring substantially equal skill, effort, and responsibility under similar working conditions." *McMillan v. Massachusetts Society for the Prevention of Cruelty to Animals,* 140 F.3d 288, 298 (1st. Cir.1998).

LeGoff has set forth facts allowing one to conclude that she was discriminated against in violation of the EPA, given that LeGoff's wages were less than her male colleagues and her job responsibilities, although of a similar kind, were greater. The motion to dismiss this count therefore turns entirely on whether her complaint was timely.

### 1. *Willfulness*

The EPA incorporates the statute of limitations of the Fair Labor Standards Act (FLSA), under which actions must be brought

> within two years after the cause of action accrued ... except that a cause of action arising out of a willful violation may be

commenced within three years after the action accrued.

29 U.S.C. § 255(a).

■ Willfulness under FLSA is not susceptible to clear-cut rules and abstract determinations. It is determined by whether "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute...." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *accord, Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1079 (1st Cir. 1995). Recklessness involves more than mere awareness of the existence of a governing federal law, or negligence in complying with it, *McLaughlin,* 486 U.S. at 134–35, 108 S.Ct. 1677, yet less than "voluntary," "deliberate," or "intentional" conduct. *Andover Newton Theological School, Inc. v. Continental Casualty Co.,* 930 F.2d 89, 91 (1st Cir.1991) (interpreting *McLaughlin*). "Deliberate indifference" to the requirements of the law, requirements that the employer "should have known" about, may be willful, while "good faith but incorrect conduct" is not. *See Sanchez v. Puerto Rico Oil Co.,* 37 F.3d 712, 721–22 (1st Cir.1994).

■ LeGoff's evidence of willfulness on the University's part is that Strickler knew of the discrepancy in pay and responsibilities between her and her male colleagues for two years, but did nothing about it, while Haines actively discouraged her from pursuing the matter, even threatening to terminate and blacklist her. She has thus alleged both knowledge that the defendants' policies might be unlawful, and serious threats in order to discourage active investigation of the matter. These facts support a conclusion that the defendants showed reckless disregard and deliberate indifference towards whether their policies constituted pay discrimination in violation of the EPA. Indeed, the threats LeGoff alleges suggest deliberate attempts to evade the act's enforcement. *See Newspapers of New England,* 44 F.3d at 1080 (reprimands to employees for reporting overtime on their timecards was evidence of willfulness); *Pollis v. the New Sch. for Soc. Research,* 132 F.3d 115, 120 (2d Cir.1997) (fact that employer knew plaintiff was "paid

less than comparable males, but did not rectify the situation" sufficient to support finding of recklessness or willfulness). Although there may well be room to explore this issue again at the summary judgment stage, LeGoff has alleged sufficient evidence of willfulness to require me to apply a three-year statute of limitations for the purposes of this motion to dismiss.

### 2. *The Accrual of LeGoff's Pay Discrimination Claim*

■ The defendants argue in the alternative that even if they committed a wilful violation of the EPA, the three-year statute of limitations has expired. LeGoff's claim accrued, they contend, when she first complained about the EPA violation, and the defendants took no corrective action. Because this complaint was in May 1992, the statute of limitations should have expired in May 1995. They also argue that, in any case, LeGoff's employment ended on August 22, 1994, with her "resignation" letter.

■ Discriminatory payment is at the heart of an Equal Pay Act claim. The act is violated each time an employee receives a lower paycheck because of her sex, no matter how many equally discriminatory paychecks she may have received in the past. As the First Circuit has emphasized, a "decision to hire an individual at a discriminatorily low salary can, upon payment of each subsequent paycheck, continue to violate the employee's rights." *Lamphere v. Brown Univ.*, 685 F.2d 743, 747 (1st Cir.1982); *accord E.E.O.C. v. McCarthy*, 768 F.2d 1, 3 (1st Cir.1985); *Bergstrom v. University of N.H.*, 959 F.Supp. 56, 61 (D.N.H.1996); *Fortunato v. Keene State College*, No. CIV 94–41–SD, 1994 WL 269340, at *2 (D.N.H. June 14, 1994). Employees hired at a discriminatory rate of pay outside the limitations period may bring EPA claims if they continued working and receiving that pay during an actionable period. *McCarthy*, 768 F.2d at 3–4. For this reason, neither LeGoff's first complaint about the discriminatory pay scheme nor her purported resignation letter mark the accrual of her EPA claim against the University. That

claim continued as long as she continued to receive discriminatory paychecks. Therefore, because, as the defendants concede, LeGoff received her last pay check on or after August 31, her EPA claim is not time-barred.

### B. *Title IX Claim*

LeGoff argues that her rights under Title IX, 20 U.S.C. § 1681 *et seq.*, have been violated based on her treatment when employed at the University, the circumstances surrounding the termination of her employment, and the defendants' retaliatory act of failing to rehire her.[2]

Title IX states in part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

20 U.S.C. § 1681(a). The implementing regulations of Title IX in relevant part provides:

> a recipient [of federal funds] shall make all employment decisions in any education program or activity operated by such recipient in a nondiscriminatory manner and shall not limit, segregate, or classify applicants or employees in any way which could adversely affect any applicant's or employee's employment opportunities or status because of sex.

34 C.F.R. § 106.51(a)(2). The above regulation applies to both employment termination and rehiring. 34 C.F.R. § 106.51(b)(2).

■ In interpreting Title IX, courts apply the legal principles elaborated under Title VII. *Brown v. Hot, Sexy and Safer Productions, Inc.*, 68 F.3d 525, 540 (1st Cir.1995); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896–97 (1st Cir.1988); *Nelson v. University of Maine System*, 923 F.Supp. 275, 280 (D.Me.1996); *see also North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 523–530, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (concluding that Congress intended Title IX to prohibit employment discrimination).

---

**2.** The Supreme Court has implied a private cause of action under Title IX. *Cannon v. University of*

*Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

LeGoff argues that she experienced discrimination while employed at the University because she was paid less and had more responsibilities than male coaches. Subsequently, as a result of her complaints about the defendants' discriminatory acts, she was "forced to leave" her employment and then, after her discharge, retaliated against by not being rehired. The defendants do not dispute that she has made out a *prima facie* case of gender discrimination in violation of Title IX. *See Bell*, 456 U.S. at 521, 102 S.Ct. 1912 (it is a violation of Title IX for a "female employee ... [to be] paid a lower salary for like work ... or [be] forced to work under more adverse conditions that her male colleagues"). As with LeGoff's EPA claim, the defendants rest their motion to dismiss on statute of limitations grounds.

### 1. *Statute of Limitations*

■ Title IX does not contain a statute of limitations. Therefore, the most analogous or appropriate statute of limitations under state law must be applied. *Reed v. United Transp. Union*, 488 U.S. 319, 323, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987).

■ The First Circuit has not yet ruled on what state statute of limitations is applicable to Title IX claims. Yet there is a strong tradition of viewing discrimination as a "fundamental injury to the individual rights of a person." *Goodman*, 482 U.S. at 661, 107 S.Ct. 2617; *Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Most actions for discrimination have therefore been governed by the state statute of limitations for personal injuries, even when the specific act of discrimination also implicates economic interests, such as the right to contract or injuries to property. *See Goodman*, 482 U.S. at 661, 107 S.Ct. 2617 (§ 1981); *Wilson*, 471 U.S. at 276–77, 105 S.Ct. 1938 (§ 1983); *Small v. Inhabitants of the City of Belfast*, 796 F.2d 544, 546 (1st Cir.1986). This reasoning has applied with equal force to claims under Title VI, on which Title IX was modeled. *Nelson v. University of Maine Sys.*, 914 F.Supp. 643, 649 (D.Me.1996) (listing Title VI cases adopting the state statute of limitations for personal

injury claims), and has been extended by other courts to govern Title IX itself. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir.1996); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 77 (3rd Cir. 1989); *Nelson*, 914 F.Supp. at 649.

■ Discrimination in educational programs is no less an injury to individual rights under Title IX than under Title VI, and no less an affront to personal dignity than violations of one's constitutional rights under § 1983. I therefore conclude that the most appropriate state statute of limitations is that for personal injury, which in Massachusetts is three years. Mass.Gen.L. ch. 260, § 2A.

### 2. *Accrual of Plaintiff's Cause of Action*

■ A cause of action under federal law normally begins to accrue when the plaintiff "knows, or has reason to know, of the injury on which the action is based." *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992). The First Circuit has recognized, however, that discrimination may not take the form of a single, isolated act, but may continue throughout an employment relationship, forming a single "continuing violation." Because LeGoff first approached Strickler in May 1992 to complain about the discrepancy in wages and the differences in job duties between her and male coaches in the department, it is at this point that LeGoff knew she was being discriminated against. Based on this interaction, her claim would be time-barred, unless she can show that she suffered a "continuing violation" of her rights.

■ There are essentially two kinds of continuing violations: systemic and serial. *DeNovellis v. Shalala*, 124 F.3d 298, 307 (1st Cir.1997). A serial violation is one "composed of a number of discriminatory acts emanating from the same discriminatory animus, each constituting a separate wrong." *Jensen v. Frank*, 912 F.2d 517, 522 (1st Cir.1990). This type of "violation is 'continuing' by virtue of the fact that it keeps happening" against the same individual. *Id.* 912 F.2d at 522. A systemic violation, by contrast, "has roots in a discriminatory policy or practice; so long as the policy or practice

itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint." *Id.* 912 F.2d at 523.

■ Under the serial violation theory, the plaintiff asserts that throughout her employment she "complained to the defendants about the fact that she was forced to do two jobs full-time at an unequal pay rate that men were receiving for one job." (Plaintiff's Opposition, p. 8). She was then threatened for making such complaints and, ultimately, forced to resign. Here, too, the issuance of allegedly discriminatory paychecks is a crucial factor. Even outside the EPA context, the Supreme Court has described discriminatory pay as a paradigmatic serial violation: "Each week's paycheck that delivers less ... [because of discrimination] is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior" to the limitations period. *Bazemore v. Friday,* 478 U.S. 385, 395–96, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). *Bergstrom,* 959 F.Supp. at 61 (characterizing ongoing discriminatory pay and working conditions as a "continuing violation"); *Fortunato,* 1994 WL 269340, at *2 (same).

■ Because the University continued to pay LeGoff at a discriminatory rate until August 31, 1994, it continued to violate her rights until that date, and this aspect of her Title IX claim is not time-barred. As to whether the University had a policy of discriminating against female coaches in its athletic program, such that its treatment of LeGoff would constitute part of a "systemic violation," *see Jensen,* 912 F.2d at 523, the plaintiff relies here on an affidavit from her

attorney, submitting evidence of the results of the OCR investigation. Consideration of such documents is premature at this stage.[3]

### 3. *Retaliation: Failure to Rehire*

■ Title IX prohibits retaliation against those who complain of violations of the act. *See* 42 U.S.C. § 2000e–3(a); 34 C.F.R. §§ 100.7(e), 106.71. Such complaints need not be formal complaints to an enforcement agency, but also include internal acts of opposition to discrimination, including merely voicing concerns to superiors within the university. *See Wyatt v. City of Boston,* 35 F.3d 13, 15 (1st Cir.1994) (describing as actionable retaliation either for filing a formal Title VII complaint or for merely opposing discrimination);[4] *Lowrey v. Texas A & M Univ. Sys.,* 117 F.3d 242, 244 n. 1, 250 (5th Cir.1997) (describing retaliation for having made internal reports about violations of Title IX); *Nelson,* 923 F.Supp. at 284 ("oppositional conduct" required to make out retaliation claim present where employee "voiced concerns" over discrimination to university vice president but did not file any formal complaint).

■ LeGoff has alleged that she expressed her concern over the University's discriminatory treatment of female coaches to Strickler and Haines, and was threatened by the latter that she would be fired and blacklisted if she pursued the matter. Several months later, she was not hired for a position for which, she alleges, she was the most qualified applicant. She has alleged sufficient facts to make out a *prima facie* case of retaliation. Because the alleged retaliatory failure to rehire occurred in Novem-

---

**3.** Having found sufficient grounds to deny defendants' motion with regard to this claim, I need not reach several other statute of limitations issues raised by LeGoff's complaint. It is worth noting, however, that if it later can be shown that LeGoff did, in fact, resign on August 22, 1994, the constructive discharge claim will be time-barred. In employment discrimination cases involving wrongful discharge, and, by implication, constructive discharge, "the statute of limitations begins to run when the plaintiff learns of the decision to terminate [her] employment." *Rivera–Muriente,* 959 F.2d at 353. The cause of action accrues when the employee "reliably" knows she has lost her job, not when any particular, formal personnel action is taken. *Id.*

There is also an interesting issue as to how long the inequity in working conditions—another aspect of LeGoff's Title IX claim—can be said to have continued; LeGoff apparently was employed on a ten-month contract, suggesting that her job duties ended at the end of June, 1994, even if she continued to be paid for two months thereafter.

**4.** Like other substantive aspects of Title IX, *Lipsett,* 864 F.2d at 896–97, retaliation claims may be judged by the standards elaborated under Title VII. *See Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 248–49, 251 (2nd Cir. 1995); *Preston v. Commonwealth of Va. ex rel. New River Community College,* 31 F.3d 203, 206 (4th Cir.1994); *Nelson,* 923 F.Supp. at 279.

ber 1994, moreover, there is no dispute that it fell within the limitations period.

## C. State Law Claims

██ LeGoff brings three pendant state law claims: constructive discharge, negligence, and tortious interference with an advantageous relationship. All three are classic personal injury tort claims and therefore governed by the three-year statute of limitations of Mass.Gen.L. ch. 260, § 2A. *See, e.g., Pagliuca v. City of Boston,* 35 Mass.App.Ct. 820, 626 N.E.2d 625, 628 (Mass.1994) (applying the three-year personal injury statute of limitations to a complaint similar to LeGoff's); *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811, 816 (1982) (describing interference with advantageous relations as a common law tort).

### 1. Constructive Discharge

██ My analysis of LeGoff's constructive discharge claim is governed by my decision, *supra,* not to convert the defendants' 12(b)(6) motion into a motion for summary judgment. Should the defendants ultimately show that LeGoff resigned on August 22, that resignation would mark the date of her discharge and put an end to this count of her complaint. For the purposes of this motion to dismiss, however, I must accept LeGoff's assertion that she was employed by the University until August 31, 1994.[5]

### 2. Negligence

LeGoff also brings a count for negligence against the University, alleging that it failed to exercise reasonable care in its supervision of Strickler and Haines and in its establishment of "requirements for male and female coaches." This count encompasses the actions of Strickler and Haines both at the time of LeGoff's constructive discharge—August 31, 1994, for the purposes of this motion—and when they failed to rehire her in November 1994. It is thus not barred by the applicable three-year statute of limitations.[6]

### 3. Tortious Interference with Advantageous Relationship

The final count in LeGoff's complaint alleges that Strickler and Haines tortiously interfered with her relationship with the University. This is the only count of the complaint that the defendants seek to dismiss on the merits.

██ A claim for tortious interference with contractual relations requires a contract between the plaintiff and a third party, which the defendant improperly induced the third party to break. *Felinska v. New England Teamsters And Trucking Indus. Pension Fund,* 855 F.Supp. 474, 478 (D.Mass.1994); *Boyle v. Boston Found., Inc.,* 788 F.Supp. 627, 629 (D.Mass.1992); *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20, 21 (1990). A supervisor is not normally considered a third party to the contract between her subordinate and their common employer, unless the supervisor, motivated by "malice," committed an intentional tort which was neither within the scope of employment nor related to the employer's legitimate corporate interests. *O'Brien v. New England Tel. & Tel. Co.,* 422 Mass. 686, 664 N.E.2d 843, 844, 846 (1996); *Anzalone v.*

---

**5.** Although it is premature to decide the merits of this claim on a motion to dismiss that addresses only statute of limitations issues, LeGoff's constructive discharge claim appears to rest on uncertain ground. Under both federal and state law, a constructive discharge claim requires a showing that the plaintiff's working conditions were so difficult as to be intolerable. *GTE Products Corp. v. Stewart,* 421 Mass. 22, 653 N.E.2d 161, 168 (1995). The test is whether, by an objective standard, " 'the new working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986) (quoting *Rosado v. Santiago,* 562 F.2d 114, 119 (1st Cir.1977)); *see also Serrano–Cruz v.*

DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997). Dissatisfaction with job assignments and compensation is not enough. *GTE,* 653 N.E.2d at 169.

**6.** There is, however, some question as to whether an employee's negligent supervision claim against her employer is barred by the exclusivity provision of Mass.Gen.L. ch. 151B or by the state workers' compensation laws. Mass.Gen.L. ch. 152, § 24. *See Clarke v. Kentucky Fried Chicken of Cal., Inc.,* 57 F.3d 21, 27–29 (1st Cir.1995); *Choroszy v. Wentworth Inst. of Tech.,* 915 F.Supp. 446, 451–52 (D.Mass.1996); *but see Donovan v. Mount Ida College,* 1997 WL 259522, *6 (D.Mass. Jan. 23, 1997).

*Massachusetts Bay Transp. Auth.,* 403 Mass. 119, 526 N.E.2d 246, 248–49 (1988); *Alba v. Sampson,* 427 Mass. 1104, 44 Mass.App.Ct. 311, 690 N.E.2d 1240, 1243 (1998).

The defendants argue that LeGoff has alleged neither that Strickler and Haines were motivated by "actual malice," nor that their alleged action were "in no way" within the scope of their employment or related to the University's corporate interests. "Malice," however, has traditionally been defined as acting with the unlawful purpose of harming the plaintiff, "without right or justifiable cause," *see Anzalone,* 526 N.E.2d at 248–49 (quoting *Walker v. Cronin,* 107 Mass. 555, 562 (Mass.1871)), a definition that Massachusetts courts have expanded to include intentional discrimination. *See Speen v. Crown Clothing Corp.,* 102 F.3d 625, 635 (1st Cir.1996); *Comey v. Hill,* 387 Mass. 11, 438 N.E.2d 811, 816–17 (1982). Nor can unlawful acts—including unlawful gender discrimination, threats, and retaliation—be considered to be within the scope of a supervisor's duties. *Presto v. Sequoia Sys., Inc.,* 633 F.Supp. 1117, 1122 (D.Mass.1986). Therefore, in alleging that Haines and Strickler discriminated against her on the basis of gender, and threatened and retaliated against her for complaining of that discrimination, LeGoff has made out a *prima facie* case of tortious interference. *See also Wright v. Shriners Hosp. for Crippled Children,* 412 Mass. 469, 589 N.E.2d 1241, 1245 (1992) (no malice shown because "the corporation *had a right* to discharge" the plaintiff for the reason it did) (emphasis added); *Boyle,* 788 F.Supp. at 630 (suggesting that "intentional acts by a supervisor which caused an employee to resign" might be sufficient to make out a claim for tortious interference).

This count is governed by the same time frame as the other state law counts, including the disputed constructive discharge date of August 31, 1994, and the allegations of retaliation in November of that year. It is therefore also timely.

### III. *CONCLUSION*

The defendants have moved to dismiss all of the counts in the plaintiff's complaint as time-barred. It is undisputed that LeGoff received her last paycheck on August 31,

1997. That fact, combined with LeGoff's allegations that the defendants willfully ignored her complaints about the gender-based discrepancy in pay in her department and threatened to retaliate against her for pursuing the matter, is sufficient to make LeGoff's Equal Pay Act claim timely.

Because for the purposes of this motion to dismiss, I must take all of the facts alleged in the plaintiff's complaint as true, I must assume that LeGoff's employment with the University continued until August 31, 1997. LeGoff has also alleged that the defendants retaliated against her for her complaints of gender discrimination as late as November 1994. Her Title IX claim is therefore also timely, at least regarding the allegations of pay discrimination, constructive discharge, and retaliation. The parallel common law claims for constructive discharge, negligent supervision, and tortious interference with an advantageous relationship are governed by the same time frame and are equally timely. Defendants' motion to dismiss (docket # 11) is therefore **DENIED.**

The parties are ordered to appear for a status conference in this case at 2:30 p.m. on November 17, 1998, in Courtroom 4 on the 3rd floor of the new Federal Courthouse, 1 Courthouse Way, Boston, Massachusetts 02210.

**SO ORDERED.**